## Carlsson, Appellant, *v.* Pennsylvania General Insurance Company.

Argued April 15, 1969. Before WRIGHT, P. J., WATKINS, MONTGOMERY, JACOBS, HOFFMAN, SPAULDING, and CERCONE, JJ.

*Paul D. Shafer, Jr.,* with him *Thomas, Shafer, Walker, Dornhaffer & Swick,* for appellant.

*Stuart A. Culbertson,* with him *Allen and Truax,* for appellee.

OPINION BY HOFFMAN, J., June 13, 1969:

This action of assumpsit was tried before a judge sitting without a jury. The court found for the defendant and this appeal followed. The court found the following facts.

William K. Unverzagt, a resident of Pittsburgh, owned a 1960 automobile. His son, William S. Unverzagt, was a student at Allegheny College in Meadville. The father had given the son permission to operate the automobile in the Pittsburgh area, and had affixed no restriction as to its operation there. He had, however, refused his son permission to take the car to Meadville. In spite of this express prohibition, the son took the auto to Meadville at a time when his parents were not at home, and when his father was under the impression that the car remained in Pittsburgh. The son loaned the car to Allen Glick and Erik Carlsson.

Subsequently, Erik Carlsson, while driving the automobile was involved in an accident. A lawsuit was instituted against Carlsson resulting in judgments against him totaling $10,000.

At the time of this accident, Erik Carlsson was a member of the household of his father, Henry Carlsson, and was covered by an automobile policy issued by defendant insurance company. When the above suits were instituted, defendant refused to defend the actions brought against plaintiff. As a result plaintiff retained his own attorneys to defend him which resulted in attorneys' fees and costs of $1530.08.

Plaintiff, in this action, now seeks to recover from the defendant insurance company: (1) the amount of

the judgments against him, and (2) the attorneys' fees and costs incurred in defending the actions against him.[1]

Defendant's insurance policy provided insurance coverage under the "non-owned automobile" provisions as follows: "The following are insureds under Part I . . . (b) With respect to a non-owned automobile (1) the name insured (2) any relative but only with respect to a private passenger automobile or trailer provided the actual use thereof is with the permission of the owner."

The defendant insurance company contends that at the time of the accident Erik Carlsson was not operating the Unverzagt automobile with the permission of William K. Unverzagt, the actual owner. Plaintiff argues, on the other hand, that he had the permission of the actual owner's son who had possession and control of the vehicle, that he was unaware of the territorial restrictions imposed by the father, and that he drove the automobile under the reasonable assumption that the son had the right to lend it to others.

Many courts have considered the effect on insurance coverage of the use of an automobile by a second permittee with the consent of the first permittee but without the consent of the titleholder. The decisions in the various jurisdictions in this regard have been conflicting. See "Omnibus Clause of Automobile Liability Policy as Covering Accidents Caused by Third Person Who Is Using Car with Consent of Permittee of Named Insured", 4 A.L.R. 3d 10 et seq. The law in Pennsylvania would appear to be that there is no

---

[1] The insurance policy provided, as do all such insurance policies, that the company shall defend any such suit. Failure of the insurer to defend, without cause, gives rise to a cause of action. *Cadwallader v. New Amsterdam Casualty Company*, 396 Pa. 582, 152 A. 2d 484 (1959).

basis for finding implied permission to the second permittee to drive the automobile where the first permittee has been specifically denied the right to lend the auto to another. *Helwig v. Easterly*, 205 Pa. Superior Ct. 185, 208 A. 2d 10 (1965) and even where the first permittee is not specifically prohibited from lending the automobile, *Volk v. Cacchione*, 395 Pa. 636, 150 A. 2d 849 (1959).

Virtually all of these cases, however, have arisen under the "omnibus" clause which is designed to afford protection to any who might drive the automobile mentioned in the policy itself. The statute underlying this coverage specifically contemplates that the driver should only be covered when he is driving "with the express or implied permission of such named insured..." Act of April 29, 1959, P. L. 58, §1421(a)(2), 75 P.S. §1421(a)(2). Such coverage would appear to be so limited on the theory that the insurer is only prepared to cover those driving the automobile with permission; its exposure should not be extended to cover those who have not paid an insurance premium, and do not have the express or implied consent of the named insured. In such circumstances, the driver cannot reasonably be thought to have known of or relied upon the existence or extent of such coverage.

Few cases, however, have considered these situations where the "non-owned automobile" coverage is involved. No reported case on this question in Pennsylvania has been brought to our attention either by our research or the research of the parties. It becomes necessary, therefore, to consider whether different standards should be applied to the nonowned automobile coverage than are applied to the omnibus clause.

Nonowned auto insurance is required in motor vehicle liability policies by the Act of April 29, 1959, P. L. 58, §1421, 75 P.S. §1421, which similarly requires

the omnibus coverage mentioned earlier. Under that statute a policy of insurance to be valid must "insure the person named, as insured, therein against loss from the liability imposed upon him by law for damages arising out of the use, by him of *any motor vehicle, not owned by him*, within the same territorial limits, and subject to the same limits of liability as are set forth above with respect to an owner's policy of liability insurance." [Emphasis added]

The purpose of such legislation would appear to be clear. The Commonwealth seeks to provide protection for the insured and members of his family whenever they are driving automobiles. This provision allows them to drive a nonowned automobile without fear that the title owner may not have adequate insurance. It assures sufficient protection without regard to the insurance of the title owner. Thus, it suggests to the driver that he, and the people who might be injured by him, are protected, even if he *does not fall within* the provisions of the title owner's omnibus coverage.

It is significant to note that the legislature apparently recognized that broader coverage was necessary when one is seeking protection under his own policy. Thus, the "omnibus" provision in the statute makes specific reference to the need for the express or implied permission of the named insured. The "nonowned automobile" section, however, quoted above makes no such reference to permission but provides coverage when driving "any motor vehicle not owned by him."

The policy, in this case, therefore, introduces the element of consent which was omitted under the provisions of the statute itself. Since this additional element has been added, it becomes necessary for us to determine the purpose and intent of this "consent" clause, and whether it should be or was intended to be applied in our case.

When insurance companies first provided nonowned auto insurance, policies were silent as to permission. The policies simply stated: "With respect to a non-owned automobile . . . (2) any relative, but only with respect to a private passenger automobile or trailer not regularly furnished for the use of such relatives." .

Cases then arose where children of insured persons stole automobiles and were involved in accidents. Of course, there could be no coverage under the omnibus clause in their parents' policies. The courts held, however, that the nonowned auto coverage in the policies did afford coverage. *Sperling v. Great American Indemnity Co.*, 7 N.Y. 2d 442, 166 N.E. 2d 482, 199 N.Y.S. 2d 465; *Bowman v. Preferred Risk Mutual Ins. Co.*, 348 Mich. 531, 83 N.W. 2d 434; *State Farm Mutual Auto Ins. Co. v. Walker* (Texas), 334 S.W. 2d 458; *Home Indemnity Ins. Co. v. Ware*, 183 F. Supp. 367 (D.C. Delaware).

As a result, the insurers added the limitation as to consent, so that they would not be liable for injuries caused by persons stealing cars. The issue to be decided by us, however, is whether the consent provisions were intended to include and should include those situations where the insured is driving unaware that he is doing so without the consent of the title owner.

In deciding this question we turn first to *Phillips v. Government Employees Insurance Company*, 258 F. Supp. 114 (E.D. Tenn. S.D. 1966).

In *Phillips*, the wording of the insurance policy was identical with the policy in the present case; the factual situation was also virtually indistinguishable. There, the father had given permission to his son to use the automobile but had instructed him not to permit anyone else to drive it. The son, however, allowed another boy to use the automobile who was involved in an accident.

The District Court determined that the single issue was whether the word "owner" could include not only the holder of the legal or equitable title to the automobile but anyone in lawful possession of the automobile and capable of transferring lawful possession to the plaintiff. In this regard it points out that the word "owner" is never defined in the policy. It then quotes the following provision from 73 C.J.S. Property §13(2)(a): "The term 'owner' is a general term having a wide variety of meanings depending on the context and the circumstances in which it is used. Broadly, an 'owner' is one who has dominion over property which is the subject of the ownership . . . 'The term "owner" may also be synonymous with holder or possessor . . .' "

The court further points out that the word "owner" may be ambiguous when used without further definition in the policy. In this regard it quotes *Powell v. Home Indemnity Co.*, 343 F. 2d 856 (C.C.A. 8, 1965), that ". . . The plain and reasonable meaning of the word as applied to motor vehicles includes not only absolute estates but also includes estates less than absolute."

After reviewing the history of the development of this section, the court stated: "Thus, the objective of adding the phrase 'provided the actual use thereof is with the permission of the owner' was to avoid liability where a member of the insured household was driving a stolen vehicle. This purpose may be accomplished without limiting the definition of 'owner' to mean 'the holder of the legal or equitable title.' Had the insurer so intended to limit the meaning it could readily have used such language." At 116.

The court then concluded. ". . . [T]he Court is of the opinion that the word 'owner' should be construed to have been used not merely in the technical sense of referring to the holder of the legal or equitable title but

also to include its broader meaning of one having dominion or possession of the automobile and capable of transferring lawful possession to another. [The son] had lawful dominion, control and possession of the automobile at the time he granted Phillips Jr. permission to use it. [The son] was accordingly an 'owner' as that word was used in the policy and Phillips was using the automobile at the time of the accident upon August 13, 1963, with the permission of the owner . . ." At 117.

*Phillips*, then, stands for the proposition that the "owner", whose consent is required may, under the appropriate circumstances, include the possessor of the automobile. So long as the person who borrows the car takes it from one who has dominion and possession, he should be protected under his own policy unless he believes the automobile to have been stolen or otherwise taken without permission.[2]

The lower court, and the defendant, seek to distinguish *Phillips*, on the ground that there the son had lawful possession of the automobile when lending it to his friend. We do not believe, however, that this distinction is meaningful. To the contrary, we find that the facts in the instant case are more compelling in favor of the plaintiff. In the instant case the only prohibition upon the son's use of the car was that he not take it to Meadville. The record, however, fails to disclose that the son was ordinarily prohibited from lending the car to others. In *Phillips*, on the other hand, while the son was permitted to drive the car him-

---

[2] We are aware of *Globe Indemnity Company v. French*, 382 S.W. 2d 771 (1964) and *Jones v. Indiana Lumbermen's Mutual Insurance Company*, 161 So. 2d 445 (1964) which suggest that no distinction should be drawn between the permission required for coverage under the "omnibus" clause and that required under the nonowned automobile coverage. We believe, however, that these opinions fail to recognize the distinctions which must be drawn between such coverages, as is expressed in this opinion.

self, he was specifically prohibited by his father from lending the automobile to others. In *Phillips*, therefore, the transfer of possession for use by a third party was in direct opposition to a specific directive, whereas no such specific prohibition appears in this case.

Moreover, and more importantly, these distinctions are irrelevant when considered in light of the apparent intent of the policy and statute upon which it is based. Since the coverage is intended to protect drivers who are uncertain as to the insurance on the automobile itself, any attempt to bar coverage by reason of facts of which the driver could not reasonably have been aware would render the coverage nugatory. In considering this coverage, therefore, we believe that the question of consent should be viewed from the aspect of the borrower of the automobile who, in reliance on his own automobile policy, borrows the car from one whom he believes is authorized to lend it. This interpretation is more in keeping with the apparent intent of the statute itself in which the legislature makes no direct reference to the need for consent, either express or implied. The test must be a subjective one: whether the borrower actually and reasonably believed that under the circumstances he had the owner's consent, through a permittee, to drive the automobile.

If the company's interpretation is accepted, however, an individual could never borrow an automobile with a feeling of security in his own policy. He would be forced either to make an extensive investigation into the actual ownership of the automobile, and the extent of delegated authority, or run the very real risk of being without coverage. In an age when parents use children's cars, and children drive the autos of their parents, when relatives regularly lend cars to one another, when friends borrow automobiles, the very restrictive interpretation urged upon us by the insurer

would create a wide gap in insurance coverage which could work to the serious detriment of both the driver and the public at large.

Those who purchase automobile insurance do so in the expectation that they are protecting both themselves and the general public. The company's argument, however, places an impossible burden upon the insured, undermining the very objectives which he sought to achieve by purchasing such insurance. It subjects him to dangers when borrowing a car which he can neither reasonably anticipate nor against which he can ever entirely protect himself no matter how cautiously he may act.

We find, therefore that the insurance company in referring to the consent of the "owner" in nonowned automobile coverage included therein the consent of the possessor of the automobile, so long as the borrower reasonably believes that the possessor is the owner or has the permission of the owner to lend the automobile to third persons.

This is not to say that a person may rely on his own insurance when he knowingly borrows an automobile without the permission of the owner. In such circumstances the driver should receive no greater coverage than would a thief. When, however, an individual has borrowed an automobile in the reasonable belief that he has the consent of the actual owner, he should be fully covered by his own policy.[3]

In the instant case, the lower court in its findings of facts did not reach the question of whether plaintiff had knowledge that the lender was without authority to give the automobile to him. If plaintiff was without such knowledge, however, he would not be in the

---

[3] We note that insurers now regularly provide coverage "provided it is with the permission or reasonably believed to be with the permission of the owner."

position of one who had stolen an automobile or had taken it knowing of the actual owner's disapproval. Under such circumstances we would find that he should be fully covered under his own family's insurance policy, for which his family had paid, and which provided protection which he could reasonably expect.

The portion of the lower court's judgment, therefore, denying damages in the amount of the judgments, attorneys' fees and costs is to be vacated and the case remanded for new trial in accordance with the standards set forth in this opinion.[4]

Judgment vacated and case remanded for new trial in accordance with this opinion.

---

[4] There is some question as to whether the permission granted to Carlsson should be viewed as emanating directly from Unverzagt or, indirectly from Glick in light of the Court's following finding: "We also find as a fact, for purposes of completeness, that the son, William S. Unverzagt loaned the vehicle to Allen R. Glick and not to the plaintiff, Erik W. Carlsson, although he undoubtedly knew that Carlsson was going to accompany Glick." These, of course, are further matters, the relevance of which must be considered at the new trial. See *Maryland Casualty Co. v. Marshbank*, 226 F. 2d 637 (3d Cir. 1955); *Conrad v. Duffin*, 158 Pa. Superior. Ct. 305, 44 A. 2d 770 (1945).

In addition, the judgment for plaintiff in the amount of $622.10 for medical expenses which is unmentioned in this opinion and which gave us jurisdiction of this case initially (See Act of June 24, 1895, P. L. 212, §7.1, added August 14, 1963, P. L. 819, §2, 17 P.S. §191.1), is, of course, undisturbed by this decision.