**AMERICAN MOTORISTS INSURANCE COMPANY**

v.

**Rodney LaCOURSE et al.**

Supreme Judicial Court of Maine.

Jan. 30, 1974.

Richardson, Hildreth, Tyler & Troubh, by Harrison L. Richardson, Robert E. Noonan, Portland, for plaintiff.

Franklin F. Stearns, Jr., Bennett & Schwarz, P. A., by John N. Kelly, Portland, for defendants.

Before DUFRESNE, C. J., and WEATHERBEE, POMEROY, WERNICK, ARCHIBALD and DELAHANTY, JJ.

WEATHERBEE, Justice.

This was originally an action for a Declaratory Judgment and cross-claim and involved requests by two insurance companies to have determined their obligations under separate policies of liability insurance which each has written. This controversy arises from litigation now pending in the York County Superior Court growing out of a collision between two automobiles. The automobile with which we are here concerned was owned by Forest City Motor Company. The original Plaintiff, Maine Bonding and Casualty Company, had issued to Forest City Motor Company a policy of liability insurance covering the operation of this vehicle under certain circumstances. At the time of the collision the car was being driven by a young man whose father owned an automobile insured for liability by an original Defendant (and cross-claim Plaintiff) American Motorists Insurance Company. This policy contained a provision giving coverage to members of the insured's family while driving non-owned vehicles under certain circumstances. The Defendant Couillard claims to have been injured by the negligent operation of this vehicle.

Forest City Motor Company had permitted one of its salesmen, a Mr. Porterfield, to drive this car, a demonstrator, to his home in nearby Cape Elizabeth with instructions that it was not to be used by members of the Porterfield family except in cases of emergency. In violation of this instruction, Porterfield permitted his son, Glenn, home on leave from the Navy, to take the car back to Portland to pick up Mrs. Porterfield at her place of employment. While the junior Porterfield was in Portland with the car, he met a former high school classmate, the Defendant Rodney LaCourse. It was decided by the two boys that they should drive the car over to South Portland to pick up a girl friend whom Rodney had promised to drive to work. Rodney asked Glenn to let him drive the car in the hope that a favorable impression would be made upon the girl. Glenn let Rodney drive, and while Rodney was driving the Forest City Motor Company car taking the girl to work, the car collided with the Couillard vehicle. Couillard has sued Rodney and his father, Roland LaCourse, and that action is pending.

Maine Bonding and Casualty Company brought its action to determine its obligations, if any, under Forest City Motor Company's policy as to defense of Rodney in the Couillard action. American Motorists Insurance Company cross-claimed as to its obligations, if any, under the policy it had written for Roland LaCourse, Rodney's father.

Maine Bonding and Casualty Company's complaint was heard before a Justice of the Superior Court, and the cross-claim of American Motorists Insurance Company was tried before another Justice a few months later. Both policies undertook to insure the policyholders against liability

for damage caused by the operation of certain automobiles owned by the policyholders, and each policy contained the standard extended coverage provisions which included coverage of certain persons other than the policyholders while driving under certain specific situations. The pertinent parts of these provisions read:

"Persons Insured

The following are insureds under Part I:

(a) With respect to the owned automobile,

(1) the named insured and any resident of the same household,

(2) any other person using such automobile *with the permission of the named insured*, provided his actual operation or (if he is not operating) his other actual use thereof is within the scope of such permission, and

(3) any other person or organization but only with respect to his or its liability because of acts or omissions of an insured under (a) (1) or (2) above;

(b) With respect to a non-owned automobile,

(1) the named insured,

(2) any relative, but only with respect to a private passenger automobile or trailer,

provided his actual operation or (if he is not operating) the other actual use thereof is *with the permission, or reasonably believed to be with the permission, of the owner* and is within the scope of such permission, and

(3) any other person or organization not owning or hiring the automobile, but only with respect to his or its liability because of acts or omissions of an insured under (b)(1) or (2) above." (Emphasis added.)

Clause (a) is commonly referred to as the "omnibus clause" and Clause (b) is called the "non-owned automobile clause".

The issue raised by the complaint of Maine Bonding and Casualty Company was whether Rodney LaCourse was an "additional insured" under Forest City Motor Company's policy as described in clause (a). The Justice who heard this matter found that at the time of the collision Rodney LaCourse was operating the Forest City Motor Company vehicle without the permission of the owner or of anyone authorized to give him permission and that Rodney was not, therefore, an additional insured under the Maine Bonding and Casualty Company policy and was not entitled to defense or insurance under that policy. There was no appeal and so the absence of responsibility of Maine Bonding and Casualty Company is determined finally. Maine Bonding and Casualty Company and Forest City Motor Company have been ordered stricken as parties. Only the cross-claim of American Motorists Insurance Company (hereinafter, the Plaintiff) against the original Defendants, and now cross-claim Defendants, Rodney and Roland LaCourse and Raymond J. Couillard remains.

The second Justice, who tried the cross-claim of American Motorists Insurance Company, heard the testimony of Rodney LaCourse. He construed the policy to require subjective—but reasonable—belief that the borrower has the owner's permission and found that Rodney

"actually and reasonably believed that he had the owner's consent, through a permittee, to drive the automobile owned by Forest City Motor Company and that he was, therefore, entitled to coverage under the non-owned clause of his father's insurance policy."

The Justice adjudged that the Plaintiff American Motorists Insurance Company is obligated to appear, defend and pay on be-

half of Rodney and Roland in the action brought against them by Mr. Couillard.

The appeal of the Plaintiff American Motorists Insurance Company raises two issues—(1) Did the Justice correctly interpret the non-owned automobile clause of the standard extended coverage provision, and (2) If so, does the evidence support the Justice's conclusion that Rodney actually and reasonably believed that he had the owner's consent to drive the car?

*Interpretation of the non-owned automobile clause*

It is the contention of the Plaintiff that the phrase "reasonably believed" should be construed in the light of previous case law of those jurisdictions which have construed the *omnibus* clause to extend coverage to a permittee as a result of an *implied* permission but only when there is

> "an inferential permission, in which a presumption is raised from a course of conduct or relationship between the parties in which there is mutual acquiescence or lack of objection signifying consent." 7 J. Appleman, Insurance Law & Practice § 4365 (1942)..

We cannot agree with the Plaintiff's interpretation of the language of the policy.

▉ The purposes of extending coverage to additional insureds in the two clauses suggest that they were intended to have different interpretations. Under the omnibus clause the insured, after securing protection for himself and residents of his household, elects to purchase coverage for such other persons to whom he chooses to entrust the use of his automobile. His premium includes a charge for this extended coverage and he cannot be expected to intend to pay for coverage of persons who use his vehicle without his consent. *E. g.,* Savage v. American Mutual Liability Ins. Co., 158 Me. 259, 182 A.2d 669 (1962).

▉ On the other hand, the purchaser of liability insurance wishes to be assured that he and members of his family are covered if *they* are permitted to drive other people's automobiles upon which the owners may not maintain liability insurance. We must assume that such a purchaser of liability insurance does not contemplate driving such a car without the consent of the owner—but both the insured and the insurer recognize the insured's need to be protected in situations where the insured's honest belief that he has the owner's permission turns out to be mistaken.

The Justice here agreed with the holding of the Pennsylvania Superior Court in Carlsson v. Pennsylvania General Ins. Co., 214 Pa.Super. 479, 257 A.2d 861 (1969) which similarly distinguished the purposes of the two clauses in holding that coverage extended to the son of an insured who drove a non-owned automobile with the consent of the owner's son who in turn had the father-owner's permission to use the car in the Pittsburgh area but who had been refused permission to take it to Meadville where the accident occurred. The non-owned clause of the policy provided coverage only if the "actual use is with the permission of the owner". There was no reference to reasonable belief of permission as there is in our policy.

After considering the purposes of the two clauses (in the light of a Pennsylvania statute requiring all policies to insure the named insured against damages resulting from the use of "any motor vehicle, not owned by him"), the Court construed the policy to provide coverage to the driver of the non-owned vehicle if he had the owner's consent *or* if he actually and reasonably believed under the circumstances that he had the owner's consent.

▉ In our opinion the parties to our insurance contract have chosen language which clearly and specifically effectuates the purpose which the *Carlsson* Court strained to accomplish. The policy adopts different standards of entitlement to coverage of additional insureds. The standard under the omnibus clause is that of express

permission of the named insured or conduct by the named insured of such a nature that permission should in fairness to the driver be implied. The standard under the non-owned automobile clause is that of 1) permission or 2) actual but reasonable belief of the driver that he had permission of the owner to drive. We see no ambiguity in this language.[1]

We have said:

"If the terms of the policy present no ambiguity, they are to be taken and understood, as a usual thing, according to their plain and ordinary sense. . . . Parties contracting in writing are supposed to have the intentions which their agreement effectually manifests." (Citations omitted.) Johnson v. American Automobile Ins. Co., 131 Me. 288, 292, 161 A. 496, 498 (1932).

The non-owned clause of the contract speaks of the permission of the *owner*. The cross-claim Defendants make no claim that *owner* means anyone other than (in this case) Forest City Motor Company and we are satisfied that it does not.[2]

We agree with the Justice in the Superior Court that the standard intended to be applied under circumstances such as are present here is that stated in *Carlsson:*

"[W]hether the borrower actually and reasonably believed that under the circumstances he had the owner's consent, through a permittee, to drive the automobile." 214 Pa.Super. at 487, 257 A.2d at 865.

(We would add that the borrower may, of course, believe he has received the owner's permission in *other* ways than through a permittee.)

This formulation is actually composed of a subjective element—actual belief—and an objective factor—reasonableness of the belief. We agree with the Court in *Zurich* (which was interpreting language identical to that presented here) that this calls first

---

1. Implied permission is generally described as "actual permission circumstantially proven". American Universal Ins. Co. v. Dykhouse, 219 F.Supp. 62, 66 (N.D.Iowa 1963), aff'd, 326 F.2d 694 (8th Cir. 1964). Thus, implied permission differs little from express permission except that it is proved circumstantially from conduct which evidences an actual intent to permit certain actions. We believe that the non-owned clause which speaks of the *permission* of the owner includes within the term "permission" both express *and* implied permission.

If the plaintiff's contention that the "reasonable belief" phrase of the non-owned clause means only implied permission is accepted, the "reasonable belief" phrase would be redundant.

The non-owned clause is obviously intended to provide coverage when either 1) there is permission *or* 2) there is an actual and reasonable belief of permission. In the words of the New Jersey Supreme Court in construing such a clause: "If all that was contemplated was simple permission, express or implied, as conventionally understood, the disjunctive clause is meaningless surplusage." State Farm Mutual Auto. Ins. Co. v. Zurich American Ins. Co., 62 N.J. 155, 169, 299 A.2d 704, 711 (1973).

2. We are aware that it was held in Phillips v. Government Employees Ins. Co., 258 F. Supp. 114 (E.D.Tenn.1966) that the word "owner" could include not only holder of the legal or equitable title to the car but also his son to whom he had given permission to use the car although with the instruction that he should not permit anyone else to drive it. The Court there was interpreting a non-owned clause identical to that in *Carlsson* which did not contain the language "or reasonably believed to be with the permission of the owner" which is found in our policy.

The Court in *Carlsson* adopted this holding of *Phillips* as one of two grounds for its decision but with the modification that the person who borrows the car from one who has dominion and possession should be protected under his own policy "unless he believes the automobile to have been stolen or otherwise taken without permission". With this modification the *Phillips* position, in its totality, appears to have created a rebuttable presumption that a person who is given permission to drive by one who is in possession of an automobile does actually believe he has the *owner's* permission.

Our agreement with the *Carlsson* test, however, is based entirely upon the unmistakable intent demonstrated by the plain language of the policy and does not indicate an adoption of the *Carlsson* reasoning.

for an inquiry into the state of mind of the borrower.

> "Did *he* in fact believe, with reason, that the owner was thus willing, whether or not the fact-finder would conclude from the circumstances that the owner was actually willing. A second aspect of the difference, as we see it, is that the reasonableness of the claimed permittee's belief that the owner is willing under the Zurich clause, is not necessarily measured by the belief of the 'reasonable man' envisaged by the trial judge in this regard. The test is, rather, the reaction of a reasonable boy of John's age, personality and social milieu, subject to such attendant influences on his judgment and mind as may be credibly discerned from the proofs." 62 N.J. at 171, 299 A.2d at 712.

█ We agree with the Justice's conclusion that the test must be whether the borrower actually and reasonably believed he had the owner's consent (in this case, through a permittee). Following a discussion of burden of proof, we will consider Plaintiff's contention that the Justice's findings of fact—that is, that Rodney did actually and reasonably believe that he had the owner's consent, through a permittee, to drive the automobile owned by Forest City Motor Company—were clearly erroneous. M.R.C.P., Rule 52(a).

*Burden of proof*

The question of who must carry the burden of proof in a complaint for a declaratory judgment has not previously been considered by this Court. Our study of the authorities reveals that many courts have concluded that the particular problems involved in the determination of the parties' obligations under an insurance contract necessitate that the operation of the Uniform Declaratory Judgment Act in this specific area must be given separate treatment. There are two approaches to the problem.[3] One is a categorical rule that the plaintiff, who has chosen to bring the other party into court, has the burden of proving his assertions. The other holds that while the plaintiff has the burden to show jurisdiction and the existence of circumstances which would justify the court's entertaining the action and granting declaratory relief,[4] the burden of proof as to the ultimate issues should be upon the party whose responsibility it would have been to establish proof of those issues if they had arisen in an ordinary action on the contract.

While the question of who has the burden of proof as to the ultimate factual issues of coverage may frequently be critical to the decision, we find that it will not be determinative of the outcome here. Therefore, as this issue was not briefed or

3. The first school of thought is represented by the writings of Walter Anderson (2 W. Anderson, Declaratory Judgments § 375 (2d ed. 1951)) and Prof. Moore (6A Moore's Federal Practice § 57.31 (1973)) and has been followed in decisions in First National Bank v. Malady, 242 Or. 353, 408 P.2d 724 (1965); General Casualty Co. v. Hines, 261 Iowa 738, 156 N.W.2d 118 (1968); New York Life Ins. Co. v. Stoner, 109 F.2d 874 (8th Cir.), rev'd on other grounds, 311 U.S. 464, 61 S.Ct. 336, 85 L.Ed. 284 (1940). *See* notes: Developments in the Law—Declaratory Judgments—1941–1949, 62 Harv.L.Rev. 787, 837, 838 (1949); Note, Burden of Proof in Declaratory Judgment Actions, 1941 Wis. L.Rev. 513, 516, 517.

Prof. Borchard appears to have been one of the earliest advocates of the other point of view. *See* E. Borchard, Declaratory Judgments 404–09 (2d ed. 1941).

Among the decisions holding to this view (often spoken of as the *Greenough* rule) are Travelers Ins. Co. v. Greenough, 88 N.H. 391, 190 A. 129, 109 A.L.R. 1096 (1937); American Fidelity Co. v. Hotel Poultney, 118 Vt. 136, 102 A.2d 322 (1954); State Farm Mutual Auto. Ins. Co. v. American Gas Co., 150 W.Va. 435, 146 S.E.2d 842 (1966); Preferred Acc. Ins. Co. v. Grasso, 186 F.2d 987 (2d Cir. 1951). *See* 22 Am.Jur.2d Declaratory Judgments § 98 (1965); 26 C.J.S. Declaratory Judgments § 148 (1956); Annot., 23 A.L.R.2d 1260 (1952).

4. We have defined these circumstances as including presence of controversy, adversity and substance of interest and justiciability of issue. Jones v. Maine State Highway Comm'n, Me., 238 A.2d 226 (1968).

argued by counsel, we feel that because of its great importance its resolution should await full argument in another case.

The critical factual issues before the Justice here were whether 1) Rodney actually believed that he had the permission of the owner, through a permittee, to operate the vehicle and 2) whether this belief was a reasonable one for him to hold under all the circumstances.

Because we find it inappropriate to use this decision as a vehicle with which to announce for the first time a rule as to burdens of proof in this type of case, we necessarily leave undecided the question of whether the insured cross-claim Defendants here had the burden of proving that the driver *was* covered by the policy or whether the insurer has the burden of proving that he was *not*.

For the purposes of evaluating the sufficiency of the evidence to support *this* judgment *only* we will first *assume* that the cross-claim Defendants had the burden of proof as to these issues of belief and reasonableness. If the insurer's appeal cannot be sustained when so tested, a fortiori, it could not be sustained if *it*—instead of the cross-claim Defendant—has the burden of proof.

*Analysis of evidence bearing on actual, reasonable belief*

We must bear in mind that as the test of the driver's belief is a subjective one it is not enough that he *could* reasonably have believed Glenn had authority from Forest City Motor Company to give him permission to drive the car—it was necessary that there was testimony from which the factfinder could find that he actually entertained that belief. (We are still assuming that the cross-claim Defendants had the burden of proof.) There was no direct unequivocal statement by Rodney that he did have such a belief—or that he did not. While a direct affirmative statement by the driver that he believed he had the owner's permission is not required, the Jus-

tice's conclusion of fact could not be sustained in its absence unless such an inference could properly be drawn from the testimony.

It seems to us that Rodney's state of mind as to his right to operate the automobile could have been one of three possibilities: 1) He could have believed he had consent of Forest City Motor Company through Glenn. 2) He could have believed Glenn had no authority to give such consent. 3) He could have been indifferent as to whether Glenn did or did not have authority to give such consent.

The Justice made five specific findings of fact which he held supported his ultimate conclusion that Rodney actually (and reasonably) believed he had the owner's consent, through Glenn:

"(1) Rodney LaCourse knew that the automobile in question was owned by Forest City Motors and knew that Glenn Porterfield's father was an employee of Forest City Motors. (2) Rodney La-Course knew that the automobile in question was a demonstrator. (3) Rodney LaCourse had no knowledge of and had no reason to have knowledge of the regulations of Forest City Motors relative to the use of demonstrators or the restrictions placed upon their use by such regulations. (4) Rodney LaCourse requested permission of Glenn Porterfield to operate the motor vehicle and was given that permission. (5) At the time of granting permission to Rodney LaCourse to operate the motor vehicle Glenn Porterfield was in possession of it and said nothing about any restrictions upon its use."

We can discern nothing in *these* findings —supported by testimony though *they* are —which indicates Rodney's actual belief.

We have only Rodney's testimony before us. We have searched his testimony for additional evidence from which the Justice could have drawn his conclusion that Rodney believed he had the consent of Forest

**820**

City Motor Company through Glenn. We find it reveals that:

Rodney was 19 years old and was either finishing or had recently completed high school.

He knew that Glenn, his high school classmate, had just come home on leave from a Navy boot camp.

He knew that the automobile was an apparently new Chevrolet Impala.

He knew that Glenn had to pick up his mother at a certain time.

He knew Glenn did not own the car but that it was owned by Forest City Motor Company and that Glenn was not employed by Forest City Motor Company.

He had seen Glenn driving a demonstrator once or twice before but had never ridden in one with Glenn.

In addition, we find the following question and answer which prove crucial:

"Q Well, there wasn't any discussion between you and Mr. Porterfield as to whether or not he had permission to let you use the car?

A I asked him if I could drive it, that's all. I asked him and he was driving the car."

While the answer was somewhat equivocal the Justice could properly have construed it as intended to be an explanation that the witness believed that Glenn, as the one in possession of the car *under those circumstances*, was authorized to permit a friend to take a short turn at the wheel.

The Justice could properly find that Rodney had such an actual belief.

But was the belief a reasonable one under the circumstances? We do not suggest that anyone in possession of another's automobile can reasonably be assumed under *all* circumstances to be authorized to permit another to drive.

 The witness here, however, knew that Glenn's father was an employee of Forest City Motor Company; that the father frequently had the company's demonstrator cars at his home; that Glenn had driven these cars on other occasions; that on this occasion Glenn was to use the car to perform a family duty; and he had no information as to any restriction by the owner as to the operation of the demonstrator by others. The Justice observed the witness and was informed as to his age, education and experience and he found as a fact that under *those* circumstances it was reasonable for *that* witness to have believed that Glenn was authorized to let a friend enjoy the pleasure of operating the new demonstrator car for a few miles.

We cannot say that he was clearly erroneous.

The entry will be:

Appeal denied.

All Justices concurring.