998 A.2d 936

AGENCY INSURANCE CO.

v.

STATE FARM MUTUAL AUTOMOBILE
INSURANCE CO., et al.

No. 595, Sept. Term, 2009.

Court of Special Appeals of Maryland.

July 8, 2010.

Ryan E. Naugle (Winn C. Friddell, on the brief) Towson, MD, for appellant.

Michael J. Budow & Thomas P. Ryan (Richard E. Schimel, Howard R. Meinster, Budow and Noble PC, on the brief) Bethesda, MD, for appellee.

Panel: DAVIS, WOODWARD and IRMA S. RAKER (Retired, Specially Assigned), JJ.

WOODWARD, J.

On December 10, 2007, Agency Insurance Company, appellant, sought a declaratory judgment in the Circuit Court for Baltimore County against State Farm Insurance Company ("State Farm") and Allstate Insurance Company ("Allstate"), appellees, in order to determine the respective contractual responsibilities of the parties to provide insurance coverage arising from an automobile accident. After a one day bench trial, the trial court ordered on April 28, 2009, that neither State Farm nor Allstate was obligated to defend or indemnify the negligent driver. In this appeal, appellant presents two questions for review, which we have rephrased:

I. Did the trial court err by determining that State Farm was not obligated under its policy to defend or indemnify the driver of an insured vehicle who was not the named insured, a relative of the named insured, or permitted to drive the vehicle?

II. Did the trial court err by determining that Allstate was not contractually obligated to defend or indemnify its insured while he was operating a non-owned vehicle?

For the reasons stated herein, we shall affirm the judgment of the circuit court.

### BACKGROUND

This appeal arises from a fatal automobile accident that occurred in Frederick County, Maryland. In December of 2005 Barbara Brooks owned a 1999 Ford Escort (the "Escort" or the "car") that was insured by State Farm. On December 30, 2005, Aaron Zufall was driving the Escort with Brooks' minor daughter, Emily Pugh, and Tom Mullinex as passengers. While traveling on State Route 75, the Escort struck a 1995 Honda Civic driven by Lauren DeLodovico. Both Pugh and DeLodovico were killed as a result of the accident.

Under State Farm's policy covering the Escort, Brooks was listed as a named insured and Pugh was covered as a resident relative. Zufall was an insured under an Allstate policy that was issued to his parents, Harry and Robin Zufall. DeLodovi-

co was an insured under a policy with appellant, which contained a $50,000.00 uninsured motorist provision.

On December 10, 2007, appellant filed a Complaint for Declaratory Judgment, which requested that the court "[d]etermine and adjudicate the rights and liability of the parties with respect to the policies involved." A one-day trial was held on April 2, 2009. After certain stipulations were placed on the record, Brooks was the only witness to testify.

Brooks testified that she purchased, maintained, and insured the Escort. According to Brooks, the car was titled and registered in her name only. Brooks stated that she placed certain restrictions on Pugh's use of the Escort. Brooks instructed Pugh, who was a senior at Frederick High School at the time of the accident, that she was only permitted to drive the car to school, work, and when she was volunteering at Frederick Memorial Hospital. If Pugh wanted to use the car for any other purpose, Brooks required her to ask permission, state where she was going, and call when she arrived at her destination. Although Brooks testified that she told Pugh numerous times that no one else was to drive the Escort, Brooks admitted that she previously had granted Pugh's request to allow Zufall, who was then dating Pugh, to drive the car so that Pugh and Zufall could go to Medieval Times in Anne Arundel County. According to Brooks, she was unaware of any other occasion that Zufall drove the Escort.

Brooks then recounted that she permitted Pugh to drive to Zufall's house on December 30, 2005, and spend the night there. Brooks understood that Zufall and Pugh planned to pick up some other friends and travel to Burkittsville. Brooks testified that, after confirming that Zufall had an operational car, she instructed Pugh that Pugh was only allowed to drive the Escort to Zufall's house and back. The car was to remain parked at the Zufall residence once Pugh was there, and she was not to do any additional driving that evening. Brooks never told Zufall of these restrictions. Brooks also provided a statement to State Farm that she never gave Zufall permission to drive the Escort on the evening of December 30, 2005.

The depositions of Zufall and Mullinex were also introduced into evidence. Both stated that the plan for the evening of December 30, 2005, was to pick up Mullinex's cousin in Union Bridge and then drive to Burkittsville. Zufall testified that Pugh volunteered the use of the Escort and gave the keys to him. Mullinex, however, claimed that Pugh handed over the keys after Zufall stated his desire to drive the car. Zufall maintained that he was unaware that Pugh was only permitted to drive the Escort to his home that evening and asserted that Pugh never communicated any restrictions that Brooks placed on the car's use. Zufall stated that he had driven the Escort on a number of previous occasions and that Pugh had given him permission to drive the car. Both Zufall and Mullinex stated that they did not have any conversation with Brooks regarding the use of the Escort that evening.

On April 28, 2009, the trial court ruled that neither State Farm nor Allstate was required to defend or indemnify Zufall, because he did not have permission to drive the Escort at the time of the December 30, 2005 accident. A timely notice of appeal followed.

## *DISCUSSION*

### Standard of Review

Our review of a trial court's declaratory judgment regarding the scope of coverage under an automobile insurance policy is governed by Maryland Rule 8–131(c). *Mundey v. Erie Ins. Grp.*, 167 Md.App. 444, 450–51, 893 A.2d 645 (2006), *aff'd*, 396 Md. 656, 914 A.2d 1167 (2007). Rule 8–131(c) provides:

(c) **Action tried without a jury.** When an action has been tried without a jury, the appellate court will review the case on both the law and the evidence. It will not set aside the judgment of the trial court on the evidence unless clearly erroneous, and will give due regard to the opportunity of the trial court to judge the credibility of the witnesses.

Under the clearly erroneous standard, we do not disturb the factual findings of the trial court if they are supported by

competent and material evidence. *Thomas v. Capital Med. Mgmt. Assocs., LLC,* 189 Md.App. 439, 453, 985 A.2d 51 (2009). This Court, however, does not defer to a trial court's conclusions on issues of law. *Karsenty v. Schoukroun,* 406 Md. 469, 502, 959 A.2d 1147 (2008). "[U]nder Maryland law, an insurance policy is a contract." *Anderson v. Gen. Cas. Ins. Co.,* 402 Md. 236, 246, 935 A.2d 746 (2007). As the interpretation of a contract is ordinarily a legal question, we review the judgment of the trial court *de novo. Mundey,* 167 Md.App. at 451, 893 A.2d 645.

## I.

**Did the trial court err by determining that State Farm was not obligated under its policy to defend or indemnify the driver of an insured vehicle who was not the named insured, a relative of the named insured, or permitted to drive the vehicle?**

Because an insurance policy is a contract, the usual principles of contract interpretation apply, "which require that a contract be interpreted as a whole, in accordance with the objective law of contracts, to determine its character and purpose." *Anderson,* 402 Md. at 246, 935 A.2d 746. The Court of Appeals has stated:

> "An insurance policy is a contract between the parties, the benefits and obligations of which are defined by the terms of the policy." Thus, "[w]e look first to the contract language employed by the parties to determine the scope and limitations of the insurance coverage." When interpreting the language of a contract, "we accord a word its usual, ordinary and accepted meaning unless there is evidence that the parties intended to employ it in a special or technical sense."

*Clendenin Bros., Inc. v. U.S. Fire Ins. Co.,* 390 Md. 449, 458–59, 889 A.2d 387 (2006) (citations omitted) (alterations in original). "Maryland does not follow the rule that insurance policies should, as a matter of course, be construed against the insurer." *Dutta v. State Farm Ins. Co.,* 363 Md. 540, 556, 769 A.2d 948 (2001).

■ The case *sub judice* regarding State Farm requires the interpretation of the "omnibus clause" of State Farm's policy. An omnibus clause extends coverage under an automobile insurance policy to individuals other than the named insured. *Salamon v. Progressive Classic Ins. Co.,* 379 Md. 301, 315, 841 A.2d 858 (2004); Andrew Janquitto, Maryland Motor Vehicle Insurance § 7.7, at 198 (2d 1999). "The purpose of an omnibus clause is to protect the named insured, the persons within the omnibus clause, and the public generally and its members injured by the negligent operation of the insured automobile on a public highway." 12 Couch on Insurance ("Couch on Insurance") § 45:293 at 617–18 (2d 1981). Specifically, the omnibus clause serves three objectives:

(1) It gives the injured person a right to proceed against the insurer in cases in which the insurer would not otherwise be liable because the automobile was not driven by the original insured, his employee, or under other circumstances imposing liability upon the original insured for the operation of the automobile.

(2) It gives the additional insured the protection of automobile liability insurance without his having procured such a policy, for an omnibus clause creates liability insurance in favor of others than the named insured as meet the descriptions outlined in the respective policies, to the same degree and with the same effect as though such a person's name had been specifically stated in the policy as an insured, *or as though the insured had been operating the car at the time of the accident.* That is, upon the happening of an accident the protection of the insurance vests in one using the car with the permission of the insured as completely as if he had been a named insured.

(3) It may free the original insured from being sued, as in the case where the injured person brings suit instead against the additional insured for the purpose of establishing the existence of a covered liability.

*Id.* at 618–19. The provisions in an omnibus clause must be analyzed in accordance with the specific terms present in the contract:

"We note specifically that all omnibus clauses do not contain the same language. Because these clauses are part of contracts, it follows that they must be interpreted pursuant to their terms on a contract by contract or case by case basis, and not by sweeping language saying that regardless of the exact provisions of the contract we shall interpret all similar, but not identical, contracts alike."

*Wash. Metro. Area Transit Auth. v. Bullock,* 68 Md.App. 20, · 32, 509 A.2d 1217 (emphasis added) (quoting *Nat'l Grange Mut. Ins. Co. v. Pinkney,* 284 Md. 694, 706, 399 A.2d 877 (1979)), *cert. denied,* 308 Md. 237, 517 A.2d 1120 (1986).

State Farm's insurance policy in the instant case contained the following omnibus clause:

**Who Is an Insured**

When we refer to *your car,* a *newly acquired car* or a *temporary substitute car, insured* means:

1. *you;*
2. *your spouse;*
3. the *relatives* of the first *person* named in the declarations;
4. any other *person* while using such a *car* if its use is within the scope of consent of *you* or *your spouse;* and
5. any other *person* or organization liable for the use of such a *car* by one of the above *insureds.*

(Emphasis and bold in original).

■ Appellant argues that Zufall was an insured at the time of the accident under section 5 of the omnibus clause of State Farm's policy. In particular, appellant states that Brooks was a named insured on the policy, and Pugh was insured under section 3 of the omnibus clause as a resident relative. According to appellant, Pugh was in actual use of the Escort at the time of the accident, even though Zufall was driving the car, because Zufall was operating the Escort in furtherance of Pugh's purposes. Appellant asserts that the language of section 5 "contemplates operation by one and

*actual use* by an Insured, and supports a finding of coverage and duty to indemnify." (Emphasis in original). Appellant concludes that Zufall was covered under section 5 of the omnibus clause as a person "liable for the use of such a car by one of the above insureds, [*i.e.*, Pugh]."

In addition, appellant contends that the scope of Brooks' permission to Pugh "is relevant only to the extent that it may preclude coverage under [ ]section (4)" of the omnibus clause. Appellant acknowledges that in the trial court it argued that coverage also existed under section 4 of the omnibus clause, "because the permissive use may be implied from prior actions of [Pugh], [Zufall] and [ ] Brooks." Appellant states, however, that "[t]his is not the [a]ppellant's contention on appeal." In this appeal, appellant relies exclusively on section 5 of the omnibus clause for coverage of Zufall and claims that "[b]y virtue of the presence of [ ]section (5), State Farm implicitly contemplated the situation where the named insured does not give permission, and a relative does." Thus, appellant concludes, "[t]he plain language of [ ]section (5) of the omnibus clause renders [ ] Brooks' permission unnecessary in this context."

Appellant relies on *Melvin v. American Automobile Insurance Company*, 232 Md. 476, 194 A.2d 269 (1963), claiming that "*Melvin* is the best source of authority as the facts are directly on point, and the policy provisions are functionally identical." In *Melvin*, Barry Brontman ("Barry") obtained permission from his father, Harry Brontman ("Harry"), to use an automobile owned by Harry. *Id.* at 477, 194 A.2d 269. On the evening of March 9, 1957, Barry drove to a party in Baltimore. *Id.* He left the party with three other young men and went to a diner to eat. *Id.* They then decided to visit a friend in Anne Arundel County. *Id.* Barry, however, stated that he was tired and asked or told Alan Melvin to drive. *Id.* After finding their friend not at home, they were on their way back to Baltimore when Melvin lost control of the car and struck a tree, killing Barry and injuring another passenger. *Id.*

· The controversy in *Melvin* was whether the omnibus clause in Harry's automobile insurance policy with American Automobile Insurance ("American") covered Melvin. *Id.* Melvin himself was covered by an automobile insurance policy with State Farm that was issued to Melvin's father. *Id.* at 476–77, 194 A.2d 269. The relevant language of American's omnibus clause read:

> The following are insureds under part I:(a) with respect to the owned automobile, (1) the named insured and any resident of the same household, (2) any other person using such automobile, provided the actual use thereof is with the permission of the named insured;
>
> (b) With respect to a non-owned automobile, (1) the named insured, (2) any relative, but only with respect to an automobile not owned by such relative;
>
> (c) *Any other person* or organization *legally responsible for the use of (1) an automobile* or trailer *not owned* or hired *by such person* or organization, or (2) a temporary substitute automobile, *provided the actual use thereof is by a person who is an insured under (a) or (b) above with respect to such automobile* or trailer.

*Id.* at 478, 194 A.2d 269 (emphasis in original). State Farm, on behalf of the Melvins, sued American, claiming coverage of Melvin under American's policy as primary insurance. *Id.* at 477, 194 A.2d 269. The trial court entered judgment in favor of American, which State Farm appealed. *Id.*

Although it was conceded that Barry was an insured under section (a)(1), the issue was whether Melvin was covered under section (c)(1) as a person legally responsible for the use of Harry's automobile and the actual use of the automobile was by Barry. *Id.* at 478, 194 A.2d 269. Specifically, the parties contested whether Barry, who was a passenger at the time of the accident, actually "used" the car. *Id.* State Farm argued that, because Melvin was driving the car for the benefit of Barry, there was "actual use" by Barry, and as a result, Melvin was covered under section (c)(1) "as a person legally responsible for the use of an automobile, not owned or

hired by [him]." *Id.* American contended that the "actual use" of the car was by Melvin and not Barry, because Melvin was actually operating the car at the time of the accident. *Id.* Thus, according to American, Melvin was not covered by its policy. *Id.*

The Court of Appeals determined that the meaning of the words "actual use" in the omnibus clause should not be limited "to the operation of a vehicle, where the operator is the agent or servant of another and subject to his immediate and present direction and control." *Id.* at 478–79, 194 A.2d 269. The Court cited to the case of *Hardware Mutual Casualty Co. v. Mitnick,* 180 Md. 604, 607, 26 A.2d 393 (1942) for the proposition that " 'using a car' " includes " 'a borrower's making use of it by riding while driven by another.' " *Melvin,* 232 Md. at 479, 194 A.2d 269. The Court held that the "actual use" of Harry's vehicle was by Barry, and therefore Melvin was an insured under the terms of section (c)(1) of American's omnibus clause. *Id.* at 480, 194 A.2d 269.

In the instant appeal, appellant contends that State Farm's omnibus clause "provides essentially the same mechanism of coverage for [ ] Melvin as the omnibus [c]lause in the case *sub judice* provides for [ ] Zufall." According to appellant, the actual use of the Escort was by Pugh, as Zufall was driving "to carry out her original purpose." Thus appellant concludes that Zufall is an insured under section 5 of the State Farm omnibus clause.

State Farm counters that appellant's reliance on *Melvin* is misplaced because, among other things, the language of the omnibus clauses in *Melvin* and the instant case are materially distinct. According to State Farm, the focal point of *Melvin* was the interpretation of the term "actual use" in the omnibus clause of American's policy, and whether the "actual use" of Harry's vehicle was by Barry, the passenger and insured, or by Melvin, the driver and non-insured under any other provision of American's policy. By contrast, State Farm argues, the "clear and unambiguous terms" of section 5 of State Farm's omnibus clause provides coverage for Zufall only if he

was legally responsible for the use of the Escort by one of the insureds, namely, Brooks under section 1, Brooks' spouse under section 2, or Pugh under section 3. Because there was no proof at trial that Zufall was "liable" for the use of the Escort by Brooks, her spouse, or Pugh, State Farm concludes that the circuit court was correct in rejecting appellant's claim of coverage under section 5 of the omnibus clause of State Farm's policy. We agree with State Farm.

Section (c) of the omnibus clause in *Melvin* insured *"[a]ny other person ... legally responsible for the use of (1) an automobile ... not owned or hired by such person ... provided the actual use thereof is by a person who is an insured under (a) or (b) above with respect to such automobile...." Id.* at 478, 194 A.2d 269 (emphasis in original). This language can be read to include two distinct uses by two separate parties: 1) the nonowner who was legally responsible for his or her own use of the automobile, and 2) the party insured under the policy who was in "actual use" of the automobile. Under the terms of the *Melvin* omnibus clause, coverage extended to Melvin because (1) he was the nonowner driver of Harry's automobile and thus legally responsible for his own use of that vehicle, and (2) the "actual use" of the car was by Barry, who was an insured under the policy.

On the other hand, the omnibus clause in State Farm's policy is only concerned with one use. Section 5 of the omnibus clause covers "any other person or organization liable for the use of such a *car by* " one of the insureds. (second emphasis added). This language focuses on the use of the automobile by a person insured under another provision of the omnibus clause, and not on the use by "any other person or organization." In other words, insurance coverage under section 5 exists only for any other person or organization when that person or organization is responsible for an insured's negligent use of a covered vehicle. Thus Zufall can be covered under section 5 of the omnibus clause only if his liability arose from Pugh's negligent use of the Escort. For example, if Zufall was Pugh's employer and Pugh negligently caused an accident while operating the Escort within the scope of her

employment, Zufall would be liable, under the principle of *respondeat superior,* for Pugh's negligent use of the Escort and thus would be covered under section 5 of the omnibus clause. *See* Janquitto, § 7.7(c), at 214–15; Couch on Insurance § 45:339, at 680–81. Appellant's suit, however, is based on Zufall's own negligence, there being no allegation of negligent use by *Pugh* of the Escort for which Zufall would be liable. As properly noted by State Farm, "the basis for the claim of the Estate of Lauren DeLodovico against [ ] Zufall was *his own negligent driving,* not the fact that [ ] Pugh allowed him to use her mother's vehicle." (Emphasis added).

In our view, the case of *Beasley v. Allstate Insurance Company,* 246 S.C. 153, 142 S.E.2d 872 (1965), is more on point with the case *sub judice* than *Melvin.* In *Beasley,* a car owned by L.G. Tolson and driven by Raymond Wilkes was involved in an automobile accident. *Id.* at 873. Tolson's son, Darrell, was a passenger in the vehicle operated by Wilkes and sustained fatal injuries. *Id.* After prevailing in a wrongful death action against Wilkes, Darrell's estate sued Allstate Insurance Company ("Allstate"), which had issued Darrell an automobile insurance policy. *Id.* The estate claimed that it was entitled to a payment of $10,000.00, because Wilkes was an insured under Allstate's policy, which read in relevant part:

> With respect to the insurance for Bodily Injury Liability and for Property Damage Liability the unqualified word 'insured' includes (a) such named insured and spouse and (b) **any other person or organization legally responsible for the use by such named insured or spouse of an automobile not owned or hired by such other person or organization.**

*Id.* (emphasis added). The trial court found in favor of Allstate, ruling that Wilkes was not an insured under the policy. *Id.*

The sole issue on appeal was whether the above clause of Allstate's policy covered Wilkes. *Id.* In affirming the trial court's judgment, the Supreme Court of South Carolina stated that the language of the policy was "clear and completely free

of ambiguity" and that "[t]here is a complete absence of any fact in the record tending to show that Wilkes was legally responsible for any use of the automobile by either Darrell [ ] or, perchance, his spouse." *Id.* The Court explained:

Much of [the] appellant's argument is devoted to the meaning attributed by various courts to the words "legally responsible" when those words were not followed by the language here "for the use by such named insured, etc." This argument simply ignores the clear language of the policy here involved. **Wilkes was no doubt "legally responsible" for his conduct in the operation of the automobile, but such does not make him "an insured". He was "an insured" only if he was "legally responsible for the use thereof" by [Darrell] or his spouse.**

*Id.* (Emphasis added). The Court in *Beasley* concluded that "there are no facts in the record tending to show that Wilkes was legally responsible for any use being made of the automobile by [Darrell], under the doctrine of respondeat superior or otherwise." *Id.* at 874.

The relevant language of the insurance policy in *Beasley* is virtually identical to the language of section 5 of the omnibus clause in the cause *sub judice, i.e.,* "any other person or organization legally responsible for the use by such named insured or spouse. . . ." compared with "any other *person* or organization liable for the use of such a *car* by one of the above *insureds.*" (bold and italics in original). Thus, similar to Wilkes, who could only be an insured if he was legally responsible for Darrell's use, Zufall was covered under section 5 of the omnibus clause only if his liability arose from Pugh's negligent use of the Escort. Because there was no such allegation, section 5 of the omnibus clause did not provide coverage for Zufall.

We also find merit in State Farm's argument that the interpretation of the omnibus clause advocated by appellant would effectively render section 4 of that clause meaningless. Appellant's position would require that State Farm defend and indemnify under section 5 any individual operating an insured

automobile for the benefit of an insured resident, even if such use would be in direct contravention of the named insured's or spouses' explicit scope of consent under section 4. In other words, Pugh could overrule any restrictions placed on her permitted use of Brooks' Escort and extend insurance coverage under section 5 to an unlimited number of people by simply allowing an individual to operate the car for Pugh's benefit. In the words of State Farm's brief, appellant's interpretation of section 5

> allows a "first permitee" to write [ ]section 4 out of the policy altogether by simply expanding the otherwise restricted scope of permission specified by the named insured, her spouse or resident relative to include (a) additional drivers (*i.e.*, a second, third, fourth, fifth or an infinite number of permitees); (b) additional times of day (*e.g.*, not only daytime but nighttime driving as well); and (c) additional locations (*e.g.*, not only driving from the insured's residence to a friend's house, but to a bar, a fraternity house party, across the United States, *etc.*).

We thus reject appellant's reading of the omnibus clause, which would eviscerate a named insured's or spouse's authority to limit a resident relative's permitted use of an insured vehicle. *See Fister v. Allstate Life Ins. Co.*, 366 Md. 201, 219, 783 A.2d 194 (2001) ("Just as we seek to avoid farfetched interpretations of statutes, so do we wish to avoid interpreting contract language between two parties in a manner that is void of a commonsensical perspective." (citation omitted)).

In sum, we conclude that the language employed in State Farm's policy is clear and unambiguous, as well as substantially different than that employed in *Melvin*. Under the terms of the omnibus clause, Zufall could only be an insured under section 5 if he was liable for the negligent use of the Escort by Pugh. Appellant did not make any claim of Pugh's negligent use for which Zufall would be legally responsible. Therefore, we hold that Zufall was not covered by section 5 of the omnibus clause in State Farm's policy.

## II.

## Did the trial court err by determining that Allstate was not obligated to defend or indemnify its insured while he was operating a non-owned vehicle?

At the time of the accident, a personal automobile policy had been issued by Allstate to Zufall's parents. The Allstate policy provided coverage for "insured persons" using "insured autos." The Allstate policy defined "insured person," in part, as:

While using a non-owned **auto:**

a) **you,** and

b) any **resident** relative using a four wheel private passenger **auto** or **utility auto.**

(Emphasis in original).

The Allstate policy defined "insured auto," in part, as:

A non-owned **auto** used by **you** or a **resident** relative with the owner's permission. This **auto** must not be available or furnished for the regular use of an insured person.

(Emphasis in original).

Therefore, in order for the Allstate policy to cover Zufall as the driver of the Escort at the time of the accident, Zufall had to be an "insured person," and the Escort had to be an "insured auto." Because Allstate has never taken the position that Zufall was not an "insured person" at the time of the accident, the only issue for this Court to resolve is whether the Escort was an "insured auto" under Allstate's policy.

Appellant contends that the Escort was an "insured auto" under Allstate's insurance policy. According to appellant, an "owner" of an automobile can be both the title holder and anyone who is in lawful possession of the vehicle. Appellant also maintains that, although Brooks purchased, maintained, insured, and held the title to the Escort, Pugh "had several liberties associated with an undeniable ownership interest." Appellant claims that Pugh either presented herself as the owner of the car or did not disclaim ownership. Additionally,

according to appellant, both Zufall and Mullinex reasonably believed that Pugh owned the Escort. Appellant thus concludes that it would be contrary to public policy to construe the Allstate policy to deny coverage where Zufall had the permission to operate the Escort from Pugh, a named insured in rightful possession of the car, but was under the mistaken impression that Pugh was its owner.

Allstate responds that the Escort was not an "insured auto" under the policy, because Zufall did not have the owner's permission to drive the car at the time of the accident. According to Allstate, appellant's contention that an "owner" can be an individual in lawful possession of a vehicle is not supported by any Maryland law. Even if such principle was supported by Maryland authority, Allstate claims that Pugh was not in lawful possession of the Escort at the time of the accident, because Pugh was expressly denied permission by Brooks, the owner of the Escort, to operate the car at the time of the accident. Finally, Allstate maintains that Zufall's subjective belief that Pugh was the owner of the Escort is irrelevant to the issue of coverage under its policy.

█ Given the factual posture of the instant case, we do not reach appellant's contention that Pugh was an "owner" by virtue of her lawful possession of the Escort, because Pugh did not in fact lawfully possess the car at the time of the accident. Brooks provided uncontradicted testimony at trial that neither Pugh nor Zufall was permitted to drive the Escort once Pugh arrived at Zufall's home:

[COUNSEL FOR STATE FARM]: Let me ask you specifically, what if any instructions did you give to [ ] Pugh with regard to the use of the 1999 Ford Escort on December 30, 2005?

[BROOKS]: **I instructed her to drive the vehicle to [Zufall]'s house and then she could drive it home to our house. From there it stayed in his driveway. She was not to drive it elsewhere.**

[COUNSEL FOR STATE FARM]: Was anybody else allowed to drive it elsewhere?

\* \* \*

[BROOKS]: No.

\* \* \*

[COUNSEL FOR STATE FARM]: Was [Pugh] even allowed to drive it elsewhere after she got to [Zufall]'s house?

[BROOKS]: Definitely not.

(Emphasis added).

Once Zufall left with Pugh and Mullinex in the Escort to pick up Mullinex's cousin in Union Bridge on the evening of December 30, 2005, Pugh no longer had lawful possession of the car, because she exceeded the scope of Brooks' permission. Thus Pugh did not have the ability to grant Zufall permission to drive the Escort that evening. *Cf. Empire Fire & Marine Ins. Co. v. Liberty Mut. Ins. Co.*, 117 Md.App. 72, 109, 699 A.2d 482, *cert. denied*, 348 Md. 206, 703 A.2d 148 (1997) (stating that, in the context of interpreting a permissive use provision of an omnibus clause, "the person ostensibly giving permission or consent must have the power to do so" (emphasis omitted)).

Appellant next claims that, "despite the fact that [ ] Brooks paid for the 1999 Ford Escort, its maintenance, and insurance, and despite the fact she was the titled owner and named insured on the State Farm policy, [ ] Pugh had several liberties associated with an undeniable ownership interest." Appellant notes that Brooks allowed Pugh to drive the Escort to school, work, and volunteering.

 It is well settled that "title registration merely raises a presumption of ownership, which, not being conclusive, is rebuttable by evidence to the contrary if such is produced." *Liberty Mut. Ins. Co. v. Am. Auto. Ins. Co.*, 220 Md. 497, 500, 154 A.2d 826 (1959); *accord Keystone Ins. Co. v. Fid. & Cas. Co. of N.Y.*, 256 Md. 423, 426–27, 260 A.2d 275 (1970). The facts cited by appellant, however, are inadequate

to rebut the presumption that Brooks was the owner of the Escort. Pugh's name was not on the title to the car, nor its registration. Pugh did not pay any money toward the purchase of the Escort, toward its maintenance and repair, or toward the insurance on it. Other than driving the car to school, work, or volunteering, Pugh was required to ask Brooks for permission to use the car and "let [her] know where she was going and call[ ] [her] when she got there." Indeed, at trial appellant stipulated that Brooks was the owner of the Escort. Therefore, there is no evidentiary basis for finding that Pugh was the owner of the Escort.

■ Finally, Zufall's reasonable belief that Pugh could grant permission to use the Escort is irrelevant to our resolution of the coverage issue. By the plain terms of the Allstate policy, a non-owned automobile is an "insured auto" only when it is operated with the owner's permission. There is no language in the policy that provides insurance coverage when a named insured has only a reasonable belief that he or she has permission from the owner to drive the vehicle.

The case of *American Motorists Insurance Company v. LaCourse*, 314 A.2d 813 (Me.1974), which is cited by appellant, is instructive. In *LaCourse*, the Supreme Judicial Court of Maine was called upon to decide whether the son of a named insured was covered under an insurance policy when he got into an accident while driving a non-owned automobile. *Id.* at 814, 816. The policy, which was issued by American Motorist Insurance Company, covered members of the named insured's family when operating a non-owned automobile, "provided [the insured's family member's] actual operation or (if he is not operating) the other actual use thereof is *with the permission, or reasonably believed to be with the permission, of the owner* and is within the scope of such permission." *Id.* at 815 (emphasis in original). The Court held that the trial court was not clearly erroneous in finding that the insured's son "did actually and reasonably believe that he had the owner's consent, through a permittee, to drive the automobile," *id.* at 818, and thus was covered by the policy. *Id.* at 820.

By contrast in the case *sub judice*, Zufall's Allstate policy only insured non-owned automobiles "used by [an insured] with the owner's permission;" there is no language providing coverage for an insured who is operating a non-owned automobile with nothing more than a reasonable belief that he has permission from the owner to use it.[1] Therefore, we hold that Brooks' Escort was not an "insured auto" under Allstate's policy covering Zufall, because Zufall was driving the Escort without the permission of the owner at the time of the accident. Accordingly, the trial court did not err in ruling that Allstate was not contractually obligated to defend or indemnify Zufall.

**JUDGMENT OF THE CIRCUIT COURT FOR BALTIMORE COUNTY AFFIRMED; APPELLANT TO PAY COSTS.**

---

1. As previously stated, we are not confronted with the situation where it could be claimed that Pugh was an "owner" of the Escort by virtue of her lawful possession thereof, and thus could grant Zufall permission to drive the car, because Pugh was expressly forbidden by Brooks from operating the car at the time of the accident.