[No. 9420–1–III.   Division Three.   October 26, 1989.]

PROGRESSIVE NORTHWEST INSURANCE COMPANY, *Respondent*, v. JUSTINA HAKER, *Appellant*.

*Stephen T. Osborne* and *Raekes, Rettig,* for appellant.

*Andrew C. Bohrnsen* and *Lukins & Annis, P.S.,* for respondent.

SHIELDS, J.—Progressive Northwest Insurance Company filed a declaratory judgment action seeking a determination whether it was obligated to defend Justina Haker. Under the terms of the policy with its insured, Bonnie Frost, "no person shall be considered an insured person if the person drives the vehicle without the owner's expressed permission." On summary judgment, the court ruled Progressive was not obligated to defend Ms. Haker. We affirm.

The Frost vehicle was involved in an accident in Grant County on August 15, 1986. The driver was Ms. Haker, a friend of Ms. Frost's daughter, Ann, who was also in the car. There were disputed allegations that Ann Frost was intoxicated and had requested that Ms. Haker drive. It is undisputed Bonnie Frost had specifically told her daughter, Ms. Haker, and Ms. Haker's mother, that Ms. Haker did not have permission to drive the Frost vehicle. It was also undisputed that Bonnie Frost had instructed her daughter not to operate the vehicle if she was intoxicated.

The only issue presented is whether there is a question of material fact regarding the extent of coverage under the

omnibus clause of the insured's policy to include Ms. Haker's operation of the Frost vehicle.

■ Ms. Haker contends there is an issue of fact whether her operation of the vehicle was permissive, noting the courts have generally adopted a liberal interpretation of the word "permission" and in the event of any ambiguity, the policy is to be construed in favor of coverage, citing 12 R. Anderson, *Couch on Insurance* § 45:345, at 688–89 (2d ed. 1981). Ms. Haker argues permission could be inferred because (1) Ann Frost determined she was unable to drive and had implied authority to grant permission for Ms. Haker to operate the vehicle, (2) Ms. Haker operated the vehicle for the benefit of Ann Frost, thereby falling within an exception to the express consent requirement, or (3) an emergency situation existed giving rise to an implied permission to operate the vehicle. An insurer has a duty to defend only if the allegations on the face of the pleading would render the insurer liable to the insured under the policy. *State Farm Gen. Ins. Co. v. Emerson,* 102 Wn.2d 477, 486, 687 P.2d 1139 (1984).

The policy agreement's "omnibus clause" provides:

When used in Part 1 "**insured person**" or "**insured persons**" means:
   1. **You or a relative** while driving **your insured car.**
   2. **You** while driving any private passenger car other than **your insured car.**
   3. Any other person driving **your insured car.**
   4. . . . . ·

However, no person shall be considered an **insured person** if the person drives a vehicle without the owner's expressed permission.

Additionally, under the exclusions of the contract, the following is noted:

This coverage does not apply to bodily injury sustained by a person:
   . . . .
   5. While occupying a vehicle driven without the owner's permission.[1]

---

[1]There is a discrepancy between the two sections of the policy quoted above: clause 5 does not contain the word "expressed". Thus, Progressive's responsive

The term "omnibus clause" refers to coverage of one who operates or uses a covered vehicle with the permission of the owner, if the operation or use is within the scope of that permission. RCW 46.29.490(2)(b); *Progressive Cas. Ins. Co. v. Cameron*, 45 Wn. App. 272, 276, 724 P.2d 1096 (1986); *Jackman v. Cincinnati Ins. Co.*, 41 Ohio App. 3d 149, 534 N.E.2d 955, 957 (1987). An "omnibus clause" is an inclusionary clause which should be liberally construed to provide coverage for those who can reasonably be embraced within its definition. *Riley v. Viking Ins. Co.*, 46 Wn. App. 828, 829, 733 P.2d 556, *review denied*, 108 Wn.2d 1015 (1987).

The owner and "named insured" under the policy was Bonnie Frost, although title was in the name of Basin Commodities, Bonnie Frost's sole proprietorship. Ann Frost was an "insured person" because she is a relative who drove the vehicle with the permission of her mother, Bonnie Frost. She is covered by the terms of the policy as long as her use remains within the scope of that permission. *Progressive Cas. Ins. Co. v. Cameron, supra.* To determine whether Ms. Haker was an "insured person" covered by the policy, depends upon whether she drove with the "owner's expressed permission".

■■ Here, as noted by Progressive, the term "owner" is not defined by the policy. Thus, it must be given its ordinary meaning. *Moritz v. St. Paul Fire & Marine Ins. Co.*, 48 Wn. App. 521, 524, 739 P.2d 731 (1987) (citing *Federated Am. Ins. Co. v. Strong*, 102 Wn.2d 665, 670, 689 P.2d 68 (1984)). In *Kelly v. Aetna Cas. & Sur. Co.*, 100 Wn.2d 401, 407, 670 P.2d 267 (1983) the court construed the term "owner" as including those persons able to give the requisite permission for the vehicle's use and have the right and power to control it. There was no direct assertion by Ann Frost that she owned the car. Further, her interest was limited specifically by Bonnie Frost who had expressly

argument which centers on the use of the word "expressed" is not persuasive and must be rejected. In addition, this argument was not raised at trial.

permitted only her children to drive the car. It is undisputed all parties were aware Ms. Haker did not have express permission from Bonnie Frost to drive the Frost vehicle. Not only did she not have expressed permission, she had been expressly forbidden by Bonnie Frost from driving the Frost vehicle. Thus, it can be concluded Ann Frost's right to use the automobile was not so general and unrestricted in nature and degree as to carry with it an implied authority to entrust the use of the car to a third party. *Jackman,* 534 N.E.2d at 957; *State Farm Mut. Auto. Ins. Co. v. American Cas. Co.,* 150 W. Va. 435, 146 S.E.2d 842, 851 (1966); *Davis v. Allstate Ins. Co.,* 476 So. 2d 1111, 1114 (La. Ct. App. 1985) (if the original permittee has been granted a less general use of and control over the insured vehicle, with an express restriction or prohibition that he not permit anyone else to drive it, the general permission to the original permittee does not carry with it the implied consent of the named insured that others may be permitted to drive the car).

The next question to be addressed is whether Ms. Haker had implied permission, given the disputed evidence that Ann Frost had consumed alcohol just prior to the time Ms. Haker drove the car. However, even if it were assumed Ms. Haker had the implied permission of Ann Frost to drive the Frost vehicle under these specific circumstances, her driving the vehicle at that time must also have been with an implied consent derived from, and within the scope of the original permission, in order for coverage to apply. *Progressive Casualty,* at 277. In *Moritz,* at 525, this court reviewed the various approaches to the law regarding the scope of permissive use or omnibus clauses. The court stated, at page 526:

> *Eshelman, [v. Grange Ins. Ass'n,* 74 Wn.2d 65, 442 P.2d 964 (1968)] . . . held . . . that Washington follows the "middle ground" rule, refusing to adopt the liberal rule, but allowing coverage when the deviation from permissible use is relatively minor. This rule permits a deviation beyond the letter, but within the spirit of the express or implied permission to the use of the motor vehicle given by the named insured. The court

must weigh the circumstances under which the insured owner gave permission for the use of his vehicle including any limits on purpose, place, distances and time, and "undertake therefrom to virtually read the mind of the insured to the extent . . . of determining whether he would have prohibited the deviation had he been asked concerning it."

(Citations omitted.) Thus, the court has adopted a hindsight approach, reviewing the circumstances after the deviation and accident have occurred to determine if the owner would have given permission.

The evidence suggests the girls were not on the way home, but on the way to visit a friend at Ms. Haker's request.[2] Bonnie Frost was unaware Ms. Haker was driving until after the accident. There is also a suggestion that Ms. Haker had been drinking prior to driving the car. Assuming that Bonnie Frost would have consented to having someone other than her daughter drive the car if she were intoxicated,[3] the purpose of the deviation would have been limited to a sober individual driving the car to get it and her daughter home safely. Those facts are not present here. Thus, there is no evidence to suggest that Bonnie Frost, if aware of these circumstances, would have allowed the deviation. Compare *Safeco Ins. Co. v. Davis*, 44 Wn. App. 161,

---

[2]Ann Frost stated during her deposition:

"Q Isn't that what happened on occasion, you'd been drinking and were incapable of driving the car and asked Tina to drive?

"A No, I don't think that's what happened. What I remember is we'd gone to a friend's house, Mike Strickland, he's in the Navy now. We'd been talking to him and she called her friend Joanie, and we were supposed to go see—The only thing I remember is her being in a hurry and saying: Come on, let's go. And I said: I don't want to drive."

During a statement given to the insurance company, Ann Frost stated:

"We were . . . heading out towards Stratford Road, . . . to my girlfriend's boyfriend's house, he'd just gotten off band practice and we were heading out there to see him, she said she'd meet him at around 9:30, between 9:30 and 10:00 so we were going out there."

[3]As noted in Bonnie Frost's deposition:

"Q Wouldn't you have preferred that she had someone else drive if she were incapable of driving herself?

"A Well, the obvious answer to that would be yes, but I would hope she would choose someone who was in much better condition than she was, not worse."

721 P.2d 550 (1986) (coverage of unrelated 14–year–old driver using car after having been given permission by 18–year–old family member, was affirmed on basis of ambiguity found in policy with respect to term "entitled").

■ Finally, Ms. Haker argues she was covered because she drove for the benefit or advantage of Ann Frost, who remained with the vehicle. This is not the fact here, the benefit being to transport Ms. Haker to her boyfriend's house. In any event, *Jackman,* 534 N.E.2d at 958, also rejected this argument. It stated if the owner allows the use of a vehicle but expressly prohibits that use by a third party, no implied permission results unless that prohibition has been expressly revoked or the owner has knowingly acquiesced in such usage. Finding no evidence of an express rejection or knowing acquiescence, summary judgment in favor of Progressive was appropriate.

The judgment is affirmed.

THOMPSON, C.J., and GREEN, J., concur.