[No. 25563–1–I.   Division One.   March 4, 1991.]

PUBLIC EMPLOYEES MUTUAL INSURANCE COMPANY,
*Respondent*, v. ROBERT KELLY, ET AL,
*Appellants.*

*John Budlong* and *Stafford Frey Cooper & Stewart,* for appellants.

*Sidney R. Snyder, Jr.,* and *Merrick, Hofstedt & Lindsey,* for respondent.

FORREST, J.—On January 2, 1985, Robert and Nancy Kelly were seriously injured when struck by a pickup truck driven by Max Pau, an employee of AFC, Inc., while on company business. The registered and legal owner of the pickup was AFC, Inc., but the vehicle was listed on a United Pacific policy issued to Graydon Smith, AFC's president and majority shareholder.

The Kellys sued Pau, the Smiths, and AFC. Pau stated in interrogatories that AFC: (1) was the registered owner of the truck; (2) was the "actual owner"; (3) was benefited by the use of the vehicle; (4) paid the expenses for the trip that the truck was on; and (5) paid for the insurance, gas, oil, maintenance and repair of the truck. The trial court dismissed the Kellys' claims against the Smiths after the Smiths argued that they were neither the owner of the truck nor the employer of Pau, and thus owed no duty to the Kellys.[1] Neither United Pacific, Smith, Pau, nor AFC claimed that Smith owned the pickup. The Kellys' case proceeded against AFC and Pau.

The United Pacific policy designating the Smiths as named insureds contains a provision which extends coverage to the following:

(a) With respect to an Owned or Hired Automobile,
    (1) the Named Insured;
    (2) an executive officer or partner of the Named Insured;
    . . . .

---

[1]Graydon Smith's argument that he did not own the truck apparently convinced the trial court that he had no liability, since a contrary conclusion probably would not have resulted in Smith's dismissal as a party.

(4) any other person while using such an Automobile with the permission of the Named Insured, provided his Use thereof is within the scope of such permission . . .

. . . .

(b) With respect to a Non–owned Automobile,
(1) the Named Insured;
(2) an executive officer or partner of the Named Insured . . . ..

The United Pacific policy defines an "owned automobile" as "an Automobile (a) owned by the Named Insured . . .".

The United Pacific liability policy had a limit of $500,000 and listed the particular pickup truck involved in the accident. In addition to the above policy, the Smiths also had a $1 million "umbrella" policy subject to a $10,000 self–insured retention. During settlement negotiations, although the recovery sought exceeded $500,000, United Pacific never issued a reservation of rights letter and never claimed that the umbrella policy was unavailable. In 1987, the Kellys settled for $500,000, paid under the United Pacific automobile liability policy.

Because the Kellys claimed damages in excess of $500,000, they sought additional benefits on their underinsured motorist (UIM) policy with Public Employees Mutual Insurance Company (PEMCO). The Kellys claimed that under the United Pacific policy Pau was uninsured/underinsured because United Pacific was not contractually obligated to cover Pau—despite the settlement of $500,000.

PEMCO refused payment, maintaining that Pau was insured under the United Pacific policies. PEMCO sought a declaratory judgment and moved for an order of partial summary judgment, claiming that it was entitled to a $1,500,000 credit (the combined limits of the Smiths' two United Pacific policies) against any recovery that the Kellys might obtain in underinsured motorist arbitration. The trial court agreed, granting a partial summary judgment against the Kellys. After the parties stipulated that the recovery sought was less than $1,500,000, the court granted full summary judgment dismissing the Kellys' claims against PEMCO. In denying the motion for reconsideration,

the trial court stated that it believed "Mr. Pau was a permissive user of a vehicle owned by a named insured under the terms of the United Pacific policy."[2]

PEMCO asserts that the Smiths, in particular Graydon Smith, was the owner of the pickup and therefore United Pacific was contractually obligated to provide coverage for the accident in question. We disagree. AFC was the legal and equitable owner of the pickup. It paid the operating expenses of the pickup including those for the trip at the time of the accident, the trip was on AFC's behalf, and AFC possessed and controlled the pickup. We conclude that the Smiths did not own the truck.

The respondent argues that because Graydon Smith was a majority owner of AFC and exercised control over AFC's property, in effect the Smiths owned the truck. They cite *Progressive Northwest Ins. Co. v. Haker*,[3] in which the named insured under the policy was Bonnie Frost, while the title was in the name of Frost's sole proprietorship, Basin Commodities. The court held that Frost's personal policy covered the vehicle owned by the sole proprietorship, because the sole proprietorship was legally indistinguishable from the proprietor, Frost. If AFC were a sole proprietorship, *Haker* would be authority for PEMCO's claim. But AFC is a corporation and there is no basis advanced for disregarding the corporate entity. Any control Smith may have exercised over the truck is attributable to his capacity

---

[2]The trial court's unstated conclusion is that Smith owned the vehicle. This is apparent from tracing the statement's logic:

Mr. Smith was the policy's named insured. Mr. Pau was neither a named insured nor an executive officer (or partner, relative, or chauffeur) of the named insured, Mr. Smith. If Pau was a "permissive user" of the vehicle as the trial court claims, then under the policy the truck could only be an "owned" automobile, because a driver is only "permissive" when operating owned (or hired) automobiles. The policy defines an "owned vehicle" as one owned by the named insured. Smith is the named insured. Therefore Smith owns the vehicle.

[3]55 Wn. App. 828, 780 P.2d 919 (1989).

as president of AFC, not as an individual, despite the fact that Smith was a majority shareholder.[4]

While it is true that in some contexts a vehicle "owner" may differ from the owner defined in the motor vehicle code,[5] this is not one of them. In the cases cited by PEMCO, the indicia of ownership are divided between competing "owners," whereas in the present case only AFC had indicia of ownership. In *Kelly v. Aetna Cas. & Sur. Co.*,[6] the named insured, Dr. Schneider, financed a vehicle for his son but retained title in his own name to protect his financial interest. Dr. Schneider was thus in the same position as a financing bank, retaining legal ownership but exercising no control over the vehicle that his son possessed and enjoyed. Not surprisingly, the court held that Dr. Schneider's son "owned" the vehicle, and he was not covered under his father's liability insurance policy.

Smith's lack of ownership is even clearer than Dr. Schneider's, because not only did Smith lack possession and control (in his personal capacity) over the pickup, he also lacked title or registration in his name.

In accord with *Kelly v. Aetna Cas. & Sur. Co., supra,* the court in *Allstate Ins. Co. v. Neel*[7] determined that the parents who owned a security interest in their son's automobile

---

[4]*Grayson v. Nordic Constr. Co.*, 92 Wn.2d 548, 553, 599 P.2d 1271 (1979) ("[A] corporation's separate legal identity is not lost merely because all of its stock is held by members of a single family or by one person.").

[5]RCW 46.04.380 states that:
"'Owner' means a person who has a lawful right of possession of a vehicle by reason of obtaining it by purchase, exchange, gift, lease, inheritance or legal action . . . and means registered owner where the reference to owner may be construed as either to registered or legal owner."
RCW 46.04.270 defines "legal owner" as "a person having a security interest in a vehicle . . . or the registered owner of a vehicle unencumbered by a security interest . . .."

[6]100 Wn.2d 401, 670 P.2d 267 (1983).

[7]25 Wn. App. 722, 612 P.2d 6 (1980).

after loaning money for its down payment did not "own" the vehicle for purposes of their insurance coverage, because it was their son who possessed it and exercised control over it.

In *Farmers Ins. Co. v. U.S.F.&G. Co.,*[8] the court found that the term "owner" was not limited to the registered owner, but included the possessor. There, the insured, Mr. Haabey, was driving a nonowned vehicle at the request of a person who had borrowed it from a used car lot. Haabey's policy covered him when operating a nonowned vehicle with the owner's permission. The court held that Haabey was entitled to the coverage of his policy because he operated the vehicle with permission of the "owner," *i.e.,* the one in possession of the vehicle although not the one in whose name it was titled. The court noted that the purpose of Haabey's coverage and the extent of the carrier's risk was unaffected by the fact that he received permission from the one in possession rather than directly from the holder of title.

Unlike *Haker, Kelly, Neel,* and *Farmers,* where more than one party had indicia of ownership, in the present instance AFC had possession and all the legal and equitable indicia of ownership and Smith had none. Certainly no one argues that ownership would continue after one sells a vehicle even though the vehicle remains on one's policy. It follows that in this case ownership, and therefore coverage, is not established by the mere fact that the pickup was listed on Smith's insurance policy.

■■ Nor can the $500,000 payment by United Pacific create ownership of the vehicle in Smith; ownership is determined at the time of the accident. The record is unclear as to why United Pacific paid the $500,000 settlement when not legally bound to do so,[9] but the reason for

---

[8]13 Wn. App. 836, 537 P.2d 839 (1975).

[9]*See Kelly v. Aetna Cas. & Sur. Co., supra,* where USAA's (United Services Automobile Association) $100,000 payment on a liability policy was not contractually required, but did not affect Aetna's contractual umbrella liability.

the payment is irrelevant to the question of who owned the pickup. Because AFC owned the pickup and Smith's policy did not provide coverage of Pau, United Pacific had no contractual obligation to defend Pau or pay a judgment against him. Consequently, we conclude that Pau is uninsured/underinsured.

The dissent argues that because United Pacific handled and settled the Kellys' claim against Smith without a reservation of rights, the Kellys have lost their contractual rights against their UIM carrier, PEMCO, relying principally on *Transamerica Ins. Group v. Chubb & Son, Inc.*[10] The argument is not persuasive. In *Chubb,* Gamel Construction Company was sued for damages growing out of a landslide. Gamel had policies with Federal Insurance Company (Federal), Transamerica Insurance Company, Reserve Insurance Company and Continental Casualty Company, all of which arguably provided coverage. Defense was tendered to Federal which accepted without a reservation of rights and proceeded to handle the claims for 10 months, at which time it denied coverage. The court held that Federal was estopped to deny coverage as to its insured Gamel because *prejudice* was presumed by the 10–month delay. As to other carriers, the court remanded for trial to see if *prejudice* was established, thus estopping Federal to deny coverage as to them. In contrast to *Chubb,* here there was no prejudice and, hence, no estoppel. Neither Kelly nor PEMCO were prejudiced; indeed, they both benefited in the sum of $500,000. Normally, estoppel as to the insured Smith[11] would make coverage available to the claimant. However, here, as the dissent agrees, Smith is not liable as a matter of law which was established prior to the settlement. The only way Smith's United Pacific coverage could become "available" to the Kellys is by this court holding

---

[10]16 Wn. App. 247, 554 P.2d 1080 (1976).

[11]We agree with the dissent that United Pacific would be estopped as to its insured.

that United Pacific has irrevocably made its coverage available to two noninsureds, AFC and Pau. *Chubb* does not so hold. Nor is any case cited that holds that an insurer's estoppel to deny coverage as to a nonliable insured party creates an estoppel to deny coverage to a liable uninsured party.

The rule favored by the dissent creates needless uncertainty as to coverage for both the insurer and claimant. An insurer handling an uncovered claim without a reservation of rights runs the risk not only of being estopped as to its own insured but of also being estopped as to other uninsured defendants in the position of AFC and Pau. A claimant accepting any settlement from an insurance carrier of a nonliable defendant, such as Smith, would lose UIM coverage.

The remaining question is whether the Kellys are entitled to collect UIM compensation for their damages without taking into consideration the $500,000 already collected. We hold they cannot. The purpose of UIM coverage is to allow an insured party to recover those damages which they would have received had the responsible party maintained adequate liability insurance.[12] It is not the purpose of UIM coverage to provide duplicate recoveries. Indeed, it is a basic principle of damages—tort and contract—that there shall be no double recovery for the same injury.[13] The Kellys would receive a windfall if allowed to collect

---

[12]Uninsured motorist coverage is meant to protect the public from insolvent motor vehicle drivers who will not or cannot provide financial recompense for those whom they have negligently injured, and contemplating the correlated financial distress following in the wake of automobile accidents and the financial loss suffered personally by the people of this state, the legislature . . . took this action to increase and broaden generally the public's protection against automobile accidents.

*Touchette v. Northwestern Mut. Ins. Co.*, 80 Wn.2d 327, 332, 494 P.2d 479 (1972). The policy reasons for underinsured motorist coverage are closely analogous.

[13]*See Keenan v. Industrial Indem. Ins. Co.*, 108 Wn.2d 314, 318, 738 P.2d 270 (1987) (to prevent double recovery, a "PIP setoff against underinsured motorist coverage is valid only when the extent of the insured's damages are less than his policy limits") (italics omitted) (quoting *Taxter v. Safeco Ins. Co. of Am.*, 44 Wn.

UIM coverage without deduction of the $500,000 already received as compensation.

While there is no suggestion of bad faith in the present case, all contracts, and specifically insurance contracts, carry an obligation by the parties to deal in good faith. Although usually applied against the insurer, it is clearly a reciprocal duty borne by insureds as well, as reflected in RCW 48.01.030:

> The business of insurance is one affected by the public interest, requiring that all persons be actuated by good faith, abstain from deception, and practice honesty and equity in all insurance matters. Upon the insurer, the insured, and their representatives rests the duty of preserving inviolate the integrity of insurance.

Having collected a settlement from United Pacific which they were not contractually entitled to receive, we hold that good faith and fair dealing require that the Kellys receive UIM coverage from PEMCO for their damages in excess of $500,000 up to the maximum of their UIM coverage.

Reversed and remanded for further proceedings consistent with this opinion.

GROSSE, C.J., concurs.

SCHOLFIELD, J. (dissenting)—Finding myself in disagreement with the result reached by the majority opinion, I respectfully dissent. I concur in the majority's conclusion that AFC was the owner of the pickup truck and that Graydon Smith was not the owner. It follows that Smith could not, as an individual, give permission to Pau to use the truck. I agree with the majority that any control Smith exercised was in his capacity as president of AFC—not as an individual.

---

App. 121, 131, 721 P.2d 972 (1986), *review denied,* 108 Wn.2d 1037 (1987)); *Thiringer v. American Motors Ins. Co.,* 91 Wn.2d 215, 588 P.2d 191 (1978) (insurer may reduce its PIP liability by amount received from tortfeasor, but the key factor is double recovery); *Mid–Century Ins. Co. v. Brown,* 33 Wn. App. 291, 654 P.2d 716 (1982) (court awarded recovery on unjust enrichment theory after UIM carrier paid and then discovered that the responsible party did have insurance), *review denied,* 99 Wn.2d 1008 (1983).

I part company with the majority in its holding that because United Pacific had no contractual obligation to defend Pau, Pau, in the context of this case, must be treated as an underinsured motorist. I can see no reason why a decision by an automobile liability insurer to voluntarily provide coverage to a motorist for a particular loss should be treated the same, in the underinsured motorist context, as if no coverage was available.

Many occasions can arise where, due to various errors, miscommunications, disputed policy provisions, or unusual fact patterns, the coverage question is honestly debatable. On these occasions, when the insurance company resolves the doubt in favor of coverage, there is no logical basis for not treating that company's policy limits as applicable liability insurance in respect to any underinsured motorist issues. In this case, United Pacific, for reasons not explained, has resolved the issue of coverage against itself and provided to AFC and Pau the full limits of both its primary policy of $500,000 and its umbrella policy providing limits of an additional $1 million. At no time did United Pacific assert a reservation of rights or negotiate with the Kellys using as a bargaining weapon the threat of denial of coverage.

Insofar as the issue of the applicability of PEMCO's underinsured motorist coverage is concerned, the factual situation is identical to what it would be if United Pacific's coverage of AFC and Pau for the Kelly accident was clear and undisputed.

Furthermore, by the time United Pacific made a settlement with Kelly for $500,000, it could not have successfully denied coverage, even had it attempted to do so. When an insurer, without a reservation of the right to deny coverage, assumes exclusive control of the defense of claims against the insured throughout the discovery process, prejudice is conclusively presumed, and the insurer is estopped to deny coverage. *Transamerica Ins. Group v. Chubb & Son, Inc.,* 16 Wn. App. 247, 554 P.2d 1080 (1976).

Although there is authority to the contrary, if a liability insurer, with knowledge of a ground of forfeiture or noncoverage under the policy, assumes and conducts the defense of an action brought against the insured, without disclaiming liability and giving notice of its reservation of rights, it is thereafter precluded in an action upon the policy from setting up such ground of forfeiture or noncoverage. In other words, the insurer's unconditional defense of an action brought against its insured constitutes a waiver of the terms of the policy and an estoppel of the insurer to assert such grounds.

(Footnotes omitted.) 44 Am. Jur. 2d *Insurance* § 1423 (1982).

RCW 48.22.030 defines "underinsured motor vehicle" as one with respect to which no liability insurance "applies" or one where the limits of "applicable" insurance is less than the applicable damages.

The purpose of underinsured motorist coverage is to allow an injured party to recover those damages which would have been recoverable from the tortfeasor had he maintained adequate liability insurance. *Britton v. Safeco Ins. Co. of Am.*, 104 Wn.2d 518, 522, 707 P.2d 125 (1985).

United Pacific made its full insurance coverage of $1,500,000 applicable to the Kelly accident. There was no denial of coverage or reservation of the right to deny coverage at any time. The case was settled by the Kellys for $500,000 with United Pacific. United Pacific, by resolving all coverage doubts against itself, made its full liability coverage applicable to the Kelly accident. Under these circumstances, PEMCO is entitled to credit against its underinsured motorist coverage the full amount of the coverage provided the tortfeasor. *Hamilton v. Farmers Ins. Co.*, 107 Wn.2d 721, 728, 733 P.2d 213 (1987). This result serves the purpose of the underinsured motorist statute and places the loss on the underlying insurer who received the premium for that coverage.

The parties have stipulated that the Kellys' total damages are less than $1,500,000. Under these circumstances,

the Kellys have been fully compensated under the underlying insurance and underinsured motorist coverage arrangement mandated by statute in this state.

The trial court should be affirmed.

Review denied at 116 Wn.2d 1031 (1991).