[No. 12487-8-III. Division Three. November 30, 1993.]

MARLENE ROBINSON, *as Guardian ad Litem, Respondent,* v.
PEMCO INSURANCE COMPANY, ET AL, *Defendants,*
DAIRYLAND INSURANCE COMPANY, *Appellant,*
CORY B. MORLEY, *Respondent.*

*Andrew C. Bohrnsen, Erika Balazs,* and *Lukins & Annis P.S.; Ronald K. Mullin, Steven M. Cronin,* and *Mullin, Cronin & Blair, P.S.,* for appellant.

*Robert C. Tenney, Jerome R. Aiken,* and *Meyer, Fluegge & Tenney,* for respondents.

SPERLINE, J.[*] — Craig Robinson was injured on August 11, 1989, while riding in a 1974 Chevrolet pickup driven by Cory Morley. Marlene Robinson brought this declaratory judgment action to determine insurance coverage on behalf of her son Craig. The court entered judgment against Dairyland Insurance Company, concluding Cory had coverage for Craig's injuries under the nonowned vehicle provision of his

---

[*]Judge Evan E. Sperline is serving as a judge pro tempore of the Court of Appeals pursuant to RCW 2.06.150.

Dairyland policy. Dairyland appeals, contending (1) Cory did not have "permission of the owner" to drive the vehicle, but (2) if he did, he exceeded the scope of that permission. We affirm.

Title to the pickup was in the name of Ronald and Delaine Trim, although their 19-year-old daughter Shana had regular use of the pickup for at least 2 years. She had her own key to the vehicle and had the continuing permission of her parents to use it.

Shana knew her father's rule that no one outside the family was permitted to drive the vehicle, but before the accident she allowed friends to drive the pickup without her father's knowledge. Shana and Cory dated for a period of time during the year before the accident and when they used the pickup Cory usually drove. He did so on at least three or four occasions, apparently without Mr. and Mrs. Trim's knowledge.

On the day of the accident, Mr. and Mrs. Trim were on vacation in Canada. Shana spent the afternoon and early evening drinking with friends at the Trim residence. Cory arrived at the residence between 5 and 5:30 p.m., and sometime thereafter he and Shana took the pickup to town. They met Cory's friends, Craig Robinson and Darrel Saint, and two Canadian girls who were with them, and led them back to the Trim residence. Cory drove the pickup both ways. Later that evening the group decided to go to a "kegger" taking place in an orchard outside of town. They decided to take the pickup because it was the only available vehicle in which everyone could ride together. Shana, who by then had consumed half a fifth of vodka, was intoxicated. Cory had also been drinking. Shana asked who was sober enough to drive, then gave the pickup keys to Cory.

Cory drove the group to the kegger. When they arrived, Shana did not ask for the keys; Cory kept them, assuming he would be driving on the way back. The group dispersed and Shana walked off with an ex-boyfriend. Cory saw Shana only once while they were at the party. They had been there less than 2 hours when news spread that the police were

coming. Cory found Craig and Darrel and the two Canadian girls, all of whom wanted to leave. Cory tried to find Shana; he called for her and asked others where she was. After 20 minutes, and with pressure from the Canadian girls who were worried about getting home late, Cory decided to take the others back to Shana's house, then return to look for Shana if she was not already home. On the trip to town, Cory drove the Trims' pickup off the road and Craig was injured.

The pickup was insured with PEMCO Insurance Company. Mr. and Mrs. Trim were the named insureds. Spokane County Superior Court ruled by summary judgment that the PEMCO policy did not provide coverage. That decision was not appealed and is not at issue.

Cory was the named insured on a Dairyland policy which insured another vehicle. His policy provided coverage for "other *cars you* use with the permission of the owner . . .". Dairyland denied coverage for Craig's injuries, contending Cory did not have permission of the owner to drive the pickup.

On appeal, Dairyland assigns error to the court's finding that Cory was driving the pickup with Shana's permission at the time of the accident.[1] Dairyland also assigns error to the court's conclusions that Shana "shall be construed as the 'owner' under the Dairyland policy" due to her possession and exclusive control of the vehicle on the day of the accident, and that the policy provides liability coverage for Craig's injuries.

 1. Permission of the owner. The parties agree the undefined term "owner" is ambiguous. Whether the court erred in construing Shana as the "owner" is a question of law,

---

[1] Finding of fact 16 provides:

"Cory did have express permission from Shana to drive the pickup to the kegger. While he was not expressly told by the [*sic*] Shana to drive the pickup to town after the kegger, the fact that she left him the keys and had earlier realized that she was unable to drive creates a reasonable implication that she intended him to drive the pickup on the return from the 'kegger'.

"Cory therefore had implied, if not express, permission from Shana to drive the pickup at the time of the accident."

to be reviewed de novo. *Mutual of Enumclaw Ins. Co. v. Jerome*, 122 Wn.2d 157, 160, 856 P.2d 1095 (1993). Courts should give an insurance policy the same fair, reasonable and sensible construction that an average purchaser of insurance would give it. *Roller v. Stonewall Ins. Co.*, 115 Wn.2d 679, 682, 801 P.2d 207 (1990). Language in an insurance policy which is reasonably susceptible to more than one commonsense interpretation is ambiguous and must be liberally construed in favor of the insured. *Farmers Ins. Co. v. U.S.F.&G. Co.*, 13 Wn. App. 836, 841-42, 537 P.2d 839 (1975). The nonowned vehicle clause at issue is an inclusionary clause, which is liberally construed to provide coverage. *Pierce v. Aetna Cas. & Sur. Co.*, 29 Wn. App. 32, 36, 627 P.2d 152, *review denied*, 95 Wn.2d 1032 (1981).

In *Farmers*, this court construed a policy that provided insurance for nonowned vehicles used by specified persons "with the permission of the owner". There, an owner consigned his car to a car dealer, who loaned it to a customer to use while her car was being repaired. She drove the car to a party, became drunk and asked defendant Haabey to drive her car home. While doing so, Mr. Haabey was involved in an accident in which his passenger was injured. The passenger made a claim against Mr. Haabey, who was insured by Farmers. In a declaratory judgment action, Farmers sought interpretation of the term "owner". The trial court held the term would include one in possession of the vehicle; thus, since Mr. Haabey had permission of the one in possession of the car to drive it, under the policy he had permission of the owner. *Farmers*, at 837. *See also Allstate Ins. Co. v. Sandler*, 753 F. Supp. 573 (E.D. Pa. 1990) (citing *Farmers*).

██ ██ On review, this court rejected Farmers' argument that "owner" meant only "title owner". In affirming the trial court, we held the term "owner", which was not defined in the policy, was one to which the average person could assign numerous connotations; thus, it was ambiguous. *Farmers*, at 841. The court then ruled:

> In view of the rules of construction and our determination that the term "owner" is ambiguous as used in the Farmers

policy, we find that the term may include both the title owner, legal or equitable, as well as the possessor of the automobile so long as the one driving the auto reasonably believes that he has the permission of the owner to drive the vehicle. To hold otherwise would necessitate inquiry concerning who was the owner each time the car of another was driven, absent knowledge to the contrary. One could never have the secure knowledge that he was driving with permission of the owner. He would always be driving the car of another at his peril.

*Farmers*, at 843.

In *Progressive Northwest Ins. Co. v. Haker*, 55 Wn. App. 828, 780 P.2d 919 (1989), this court again considered permissive use of another's vehicle. In *Haker*, Bonnie Frost's vehicle was involved in an accident; Justina Haker was driving and Ms. Frost's daughter Ann was riding as a passenger. There were disputed allegations that Ann was intoxicated and had asked Justina to drive; however, it was undisputed that Ms. Frost had previously told Ann, Justina and Justina's mother that Justina did not have permission to drive the vehicle. *Haker*, at 829. This court affirmed the trial court's determination that Justina did not have permission to drive the vehicle, and that Bonnie Frost's insurer therefore had no obligation to defend Justina.

Citing *Farmers* and *Haker*, Dairyland argues that regardless of any express or implied permission from Shana, Cory did not have coverage under his policy because he knew *both* that Mr. and Mrs. Trim were the title owners of the vehicle and that they would have prohibited him from driving it under the circumstances. Dairyland interprets its nonowned vehicle clause too strictly.

*Farmers* and *Haker* involved the interpretation of different policy provisions. *Farmers*, as here, required interpretation of a nonowned vehicle clause in the driver's own insurance policy, while *Haker* required interpretation of an omnibus clause in the vehicle owner's policy. The purposes of the two clauses, and the insurer's risks under them, are different.

The nonowned vehicle clause is intended to protect the insured on those infrequent occasions when he is driving other people's vehicles which might not be insured. *Farmers*, at 839-

40; *American Motorists Ins. Co. v. LaCourse*, 314 A.2d 813, 816 (Me. 1974); 12 R. Anderson, *Couch on Insurance* § 45:249 (2d ed. 1981). *See also Carlsson v. Pennsylvania Gen. Ins. Co.*, 214 Pa. Super. 479, 486-87, 257 A.2d 861, 865 (1969), *aff'd*, 439 Pa. 553, 265 A.2d 520 (1970). The permission requirement of the nonowned vehicle clause operates to deny coverage to an insured who steals another's automobile, or knowingly uses it without consent. Under such circumstances, it can be presumed that the insured will not operate the other vehicle with the same degree of care as was anticipated by the insurer when it issued the policy. The same cannot be said when the insured honestly but mistakenly believes he or she is driving with the consent of the owner; both insurer and insured recognize the insured's need for protection under such circumstances. *Farmers*, at 840; *LaCourse*, at 816; 12 R. Anderson, *Couch on Insurance* § 45:255. Since the insurer is familiar with the insured and can factor a degree of risk into its policy premiums, a more liberal interpretation of "permission" and "owner" is appropriate. The intent of the contracting parties is reflected in an approach which focuses on the state of mind of the driver. The relevant inquiry is whether the driver reasonably believed that consent had been given by one able to give it. *Farmers*, at 843.

The omnibus coverage clause in the vehicle owner's policy protects other persons when they are using the covered vehicle with the permission of the owner, the named insured. *Haker*, at 831; *LaCourse*, at 816; 12 R. Anderson, *Couch on Insurance* §§ 45:341, 45:346. In effect, the omnibus clause gives the named insured the discretionary power to select additional, or other, insureds. 12 R. Anderson, *Couch on Insurance* § 45:293, at 619. This power potentially exposes the insurer to risks vastly greater than those represented by the driving of the named insured. The insurer does not control to whom the vehicle is entrusted and cannot factor in an appropriate degree of risk for unknown and unnamed drivers.

In interpreting the omnibus clause, a test which focuses on the state of mind of the driver would do violence to the

intent of the parties to the insurance agreement. *See, e.g.,* *State Farm Fire & Cas. Co. v. Rixecker*, 184 Ill. App. 3d 506, 540 N.E.2d 436 (1989). A more restrictive interpretation of "permission" and "owner" is fitting. The intent of the contracting parties is reflected in an approach which focuses on the state of mind of the vehicle owner. The relevant inquiry is whether the owner, or one authorized by the owner to do so, expressly or impliedly consented. *See Haker*, at 831-33. In the instant case, Dairyland attempts to apply the interpretation used for an omnibus clause to its nonowned vehicle clause.

It is undisputed that Cory did not have permission from either Mr. or Mrs. Trim to drive the pickup. It is also undisputed that he had not been told of their rule that no one except family members could drive it and, in fact, had driven it several times previously. He had also observed other friends of Shana driving the pickup. Under the circumstances, Cory could reasonably believe that Shana was authorized to permit whomever she pleased to drive the pickup. There is nothing in the nonowned vehicle clause of his policy which requires Cory to resolve the dispute between actual permission from Shana as an "owner" and a hypothetical denial of permission by Mr. and Mrs. Trim as "owners".

The trial court did not err by concluding that Shana should be construed as the "owner" within the context of the nonowned vehicle clause and that Cory had her "permission" to drive the pickup.

2. Scope of permission. The court's finding that Cory was driving with Shana's express or implied permission at the time of the accident is a question of fact, *see Hamm v. Camerota*, 48 Wn.2d 34, 42, 290 P.2d 713 (1955), with review limited to determining whether the finding is supported by substantial evidence and whether it supports the trial court's conclusions of law, *Ridgeview Properties v. Starbuck*, 96 Wn.2d 716, 719, 638 P.2d 1231 (1982). Evidence is "substantial" if it is of sufficient quantum to persuade a fair-minded person of the truth of the declared premise. *Cowiche Canyon Conservancy*

*v. Bosley*, 118 Wn.2d 801, 819, 828 P.2d 549 (1992); *Ridgeview Properties*, at 719.

Dairyland contends Cory exceeded the scope of Shana's permission when he "abandoned" her at the party and took the pickup, citing *Progressive Cas. Ins. Co. v. Cameron*, 45 Wn. App. 272, 724 P.2d 1096 (1986). However, *Progressive* does not help Dairyland. Construing permissive use in the context of an omnibus clause, the court notes the scope of permission may be express or implied, and may extend beyond the owner's permission if the use is within the spirit, if not the letter, of that permission. *Progressive*, at 277.

Here, the finding that Cory had implied, if not express, permission from Shana to drive the pickup at the time of the accident is supported by substantial evidence. Shana testified she let him drive to the kegger because she was too drunk to drive. She did not ask for the keys when they arrived at the party, and both she and Cory assumed he would be driving on the way home. Cory testified that when they were dating, Shana would hand him the keys and he would drive the pickup to and from their destinations. Cory's use of the pickup to drive the others back to Shana's house, with the intent of returning for her, was within the spirit of Shana's permission.

The finding that Cory's use of the vehicle was with Shana's permission clearly supports the court's conclusion Cory has coverage under his Dairyland policy.

We affirm.

THOMPSON, C.J., and MUNSON, J., concur.