[No. 12723-1-III.    Division Three.    March 1, 1994.]

STATE FARM FIRE & CASUALTY COMPANY, ET AL, *Respondents*, v. SHANNON L. MARTIN, *Defendant*, MARY LYNN PETERSON, ET AL, *Appellants*.

190

*Eugene G. Schuster* and *Critchlow, Williams, Schuster, Malone & Skalbania* for appellants.

*Christopher J. Mertens, Kenneth A. Miller*, and *Houger, Miller & Stein, P.S.C.; William R. Hickman* and *Reed Mc-Clure; Andrew C. Bohrnsen, Erika Balazs*, and *Lukins & Annis P.S.*, for respondents.

THOMPSON, C.J. — In this declaratory judgment action brought by State Farm Fire and Casualty Company and Dairyland Insurance Company, the trial court determined the driver of a vehicle involved in a collision did not have the owner's permission to use the vehicle and therefore no insurance coverage was provided under the driver's automobile insurance policy or the owner's automobile policy. We affirm.

On December 31, 1991, Mary Lynn Peterson and Kimberly A. Peterson Kuhn were riding in a car owned by Floyd Peterson. The Peterson vehicle was involved in an accident with a vehicle driven by Shannon L. Martin. Maria and Israel Barrera owned the vehicle Ms. Martin was driving and they were insured by State Farm Fire and Casualty Company. Ms. Martin was insured by Dairyland Insurance Company.

Ms. Martin made claims for coverage to both Dairyland and State Farm. Both insurers filed this declaratory judgment action and summary judgment motions. The court granted the summary judgment motions and Petersons filed this appeal. They contend there are genuine issues of fact as to whether Ms. Martin was driving the Barrera vehicle without permission.

### NONOWNED VEHICLE CLAUSE

Shannon L. Martin was the named insured on the Dairyland policy. It provided insurance coverage on nonowned cars "use[d] with the permission of the owner . . .".

A nonowned vehicle clause is an inclusionary clause which is to be liberally construed to provide coverage. *Robinson v. PEMCO Ins. Co.*, 71 Wn. App. 746, 749-50, 862 P.2d 614 (1993); *Riley v. Viking Ins. Co.*, 46 Wn. App. 828, 829, 733 P.2d 556, *review denied*, 108 Wn.2d 1015 (1987); *Pierce v. Aetna Cas. & Sur. Co.*, 29 Wn. App. 32, 36, 627 P.2d 152, *review denied*, 95 Wn.2d 1032 (1981). Such clause is intended to protect the insured on those occasions when he or she is

driving another's vehicle which may not be insured. *Robinson*, at 751 (citing *Farmers Ins. Co. v. U.S.F.&G. Co.*, 13 Wn. App. 836, 839-40, 537 P.2d 839 (1975); 12 Ronald A. Anderson, *Couch on Insurance* § 45:249 (2d ed. 1981)).

As stated in *Robinson*, at 752:

> The permission requirement of the nonowned vehicle clause operates to deny coverage to an insured who steals another's automobile, or *knowingly uses it* without consent. Under such circumstances, it can be presumed that the insured will not operate the other vehicle with the same degree of care as was anticipated by the insurer when it issued the policy.

(Italics ours.)

For purposes of determining whether Ms. Martin was insured under her Dairyland policy, the relevant inquiry is whether she knowingly drove Barreras' vehicle without their consent. Since this is an appeal of a summary judgment, the specific question is: "Was there an issue of fact as to whether Ms. Martin drove the vehicle knowing she did not have Barreras' consent?"

### Omnibus Clause

■ An omnibus clause in a vehicle owner's policy provides coverage to other persons when they are operating the covered vehicle with the owner's consent. *Progressive N.W. Ins. Co. v. Haker*, 55 Wn. App. 828, 831, 780 P.2d 919 (1989). Motor vehicle liability policies are required to include an omnibus clause. RCW 46.29.490(2)(b).[1]

Here, the vehicle involved in the accident was a covered vehicle under Barreras' State Farm policy. That policy included as an insured "any other person while using such a car if its *use is within the scope of . . . consent*". (Italics ours.) For purposes of first party benefits, the policy included as an insured any person "while occupying [the car] *with . . . permission . . .*". (Italics ours.)

---

[1]RCW 46.29.490 provides in relevant part:

"(2) Owner's policy. Such owner's policy of liability insurance:

"(a) . . .

"(b) Shall insure the person named therein and any other person, as insured, using any such vehicle or vehicles with the express or implied permission of such named insured . . .".

An omnibus clause, like a nonowned vehicle clause, should be liberally construed to provide coverage. *Haker*, at 831. The relevant inquiry in interpreting the State Farm omnibus clause is whether Barreras expressly or impliedly gave permission to Ms. Martin to use their car on December 31. More specifically: Was there an issue of fact as to whether Yolanda Barrera, the daughter of Maria and Israel Barrera, impliedly or expressly consented to Ms. Martin's use of the vehicle?

■  When determining whether a driver has implied permission for purposes of an omnibus clause when prior permission was granted,

> [i]t is necessary in each case to consider the extent and effect of the particular deviation [from prior permissible use] involved. A material deviation voids the initial permission, and the omnibus clause is not operative. A minor deviation leaves the permission unaffected, so that the omnibus clause is operative.

*Eshelman v. Grange Ins. Ass'n*, 74 Wn.2d 65, 67-68, 442 P.2d 964 (1968).

### RELEVANT FACTS

There are no facts to suggest that Ms. Martin had the *express* permission or consent of Barreras to drive their vehicle on New Year's Eve. The question is whether there is a genuine issue as to their *implied* permission or consent.

Yolanda Barrera was the principal user of the vehicle involved in the accident. Ms. Martin and Ms. Barrera were close friends and Ms. Martin occasionally used Barreras' vehicle, although there is a dispute as to whether she was given an extra key or whether she copied a key without permission.

On New Year's Eve 1991, Maria Barrera reserved rooms at the Hanford House hotel in Richland for Yolanda and her other daughter so they could celebrate the New Year. Prior to going to the Hanford House, Ms. Barrera and Ms. Martin had a few beers at Ms. Martin's apartment with their friends, Brad Purvis and Rod Shipley. Ms. Martin drove her own car to the hotel and the Barrera vehicle was driven to the hotel by Mr. Shipley.

At the hotel, Ms. Martin argued with Mr. Shipley, who struck her in the face. She became hysterical. Ms. Barrera and others took her into the hotel bathroom to calm her down. Ms. Martin claims this only made things worse because she was claustrophobic. She panicked and tried to leave, but could not find the keys to her car and no one would give them to her. She grabbed the keys to the Barrera car.

According to Ms. Martin's own statements, she recalled Ms. Barrera saying to her, "Let me have my keys". Ms. Martin also stated she told Ms. Barrera, "If you don't let me have my keys I want to take your car" and Ms. Barrera replied, "No, no, don't leave . . .".

Other pertinent facts set forth in the affidavits and deposition testimony include the following. Ms. Barrera said her sister told her Ms. Martin was getting into her car. She then ran outside and tried to stop her. When she could not get Ms. Martin out of the car, she told a guest, Santos DeLeon, to break the car window to try to stop her. Although Ms. Martin stated she did not remember seeing Ms. Barrera outside, she did recall seeing Mr. DeLeon. Mr. DeLeon said Ms. Barrera asked him to help stop Ms. Martin from leaving with her car. Mr. Purvis also said he tried to stop Ms. Martin from taking Ms. Barrera's car, as did Ms. Barrera.

Ms. Barrera's car was immediately reported stolen by Mr. Purvis. When Ms. Barrera went to the hotel desk to call the police and report her car stolen, she was told the theft had already been reported.

█ There is no genuine issue of fact as to whether Ms. Martin had Ms. Barrera's implied permission to drive the Barrera vehicle on December 31, for purpose of coverage under either insurance policy. Any permission Ms. Martin had to use the car on prior occasions was voided by Ms. Barrera's words and actions on the night of the accident. *See Eshelman*, at 67-68; *Western Pac. Ins. Co. v. Farmers Ins. Exch.*, 69 Wn.2d 11, 15, 416 P.2d 468 (1966); *Haker*, at 833. Although Ms. Martin contends Ms. Barrera was only telling her not to leave the hotel, the contention does not give rise to a genuine dispute over what she reasonably

believed. Whether a party has permission is based on the objective belief of the insured. *Moritz v. St. Paul Fire & Marine Ins. Co.*, 48 Wn. App. 521, 527, 739 P.2d 731 (1987). Even though the "more liberal" interpretation of "permission" applies to an omnibus clause, reasonable minds could reach but one conclusion. Ms. Martin could not have reasonablybelieved she had permission to drive the Barrera vehicle. As a matter of law, there was no coverage under either policy of insurance.

We affirm.

MUNSON and SCHULTHEIS, JJ., concur.

Review denied at 124 Wn.2d 1018 (1994).