[No. 12787-7-III.    Division Three.    March 29, 1994.]

TEAGUE MOTOR COMPANY, INC., ET AL, *Respondents,* v. FEDERATED SERVICE INSURANCE COMPANY, *Appellant.*

*Patrick K. Shine* and *Lukins & Annis P.S.; Michael G. Black,* for appellant.

*James K. Hayner* and *Minnick — Hayner, P.S.,* for respondents.

SWEENEY, A.C.J. — Robert Stevens, an owner and vice president of Teague Motor Company, made harassing remarks to and was physically aggressive with Nancy Burlingame, a Teague sales executive. Ms. Burlingame sued Teague and Mr. Stevens, alleging sexual harassment, discrimination, negligence, assault and battery, and breach of contract. Teague tendered defense of the suit to its commercial liability

carrier, Federated Service Insurance Company, which denied coverage. Following Teague's settlement of the claim with Ms. Burlingame, Teague brought a declaratory judgment action against Federated. Both parties moved for summary judgment. The court granted Teague's motion. Federated appeals. We reverse.

## FACTUAL BACKGROUND

On June 15, 1989, Teague's sales manager, Bill Waldron, hired Ms. Burlingame as a sales executive. Mr. Stevens, Teague's new and used car sales manager, was Mr. Waldron's supervisor.

In her complaint, Ms. Burlingame alleged Mr. Stevens attempted to kiss and touch her, made lewd, obscene and sexually suggestive remarks, stared at her for hours, physically attacked her, and on one occasion followed her into the ladies room where she was changing clothes. Ms. Burlingame repeatedly told Mr. Stevens to stop the offensive conduct. He persisted. She complained to Mr. Waldron about Mr. Stevens' conduct. Mr. Waldron responded he could not help because Mr. Stevens was his supervisor and an owner. Ms. Burlingame terminated her employment in June 1990. In 1991, she sued Teague and Mr. Stevens in federal court for sexual harassment.

Federated insured Teague pursuant to a commercial umbrella policy which included a provision obligating Federated to pay losses resulting from personal injury.[1] The policy defined personal injury as

embarrassment, fright, humiliation, mental anguish, mental injury or loss of reputation arising out of one or more of the following offenses committed in the conduct of your business,
. . .

. . . .

e. *discrimination or harassment that is not*:

(1)  intentionally committed by you, or by any partner or executive officer, or at your or their direction; or

---

[1]Federated issued three policies to Teague: a commercial general liability policy, a garage liability policy, and a commercial umbrella limit liability policy. Only the commercial umbrella policy is at issue in this case. The umbrella policy provided general liability coverage for property damage, advertising injury, bodily injury and personal injury. Only personal injury is involved here.

(2) *directly or indirectly related to the employment* or prospective employment of any person or persons by any insured.

(Italics ours.) Following an investigation of Ms. Burlingame's claims, Federated refused to defend. Teague ultimately settled the claim for $65,000.

In March 1992 Teague filed this declaratory judgment action against Federated. Teague and Federated moved for summary judgment. The court granted Teague's motion, ruling the policy covered the loss because Mr. Stevens' behavior was not directly or indirectly related to Ms. Burlingame's employment. Federated appeals.

## DISCUSSION

■■ Standard of Review. Interpretation of an insurance policy is a question of law. *Grange Ins. Co. v. Brosseau,* 113 Wn.2d 91, 95, 776 P.2d 123 (1989). Our review is de novo. The facts here are not in dispute and therefore coverage is dependent solely on the language of the policy. *Roller v. Stonewall Ins. Co.,* 115 Wn.2d 679, 682, 801 P.2d 207 (1990).

■■ Construction of Insurance Policy. An insurance policy is a contract and should be construed as such. *McMahan & Baker, Inc. v. Continental Cas. Co. (CNA),* 68 Wn. App. 573, 577, 843 P.2d 1133 (1993). The policy should be given a fair, reasonable, and sensible construction, consistent with the apparent object and intent of the parties. *E-Z Loader Boat Trailers, Inc. v. Travelers Indem. Co.,* 106 Wn.2d 901, 907, 726 P.2d 439 (1986). The language should not be given a strained or forced construction which would lead to either an extension or restriction of the policy beyond that fairly contemplated by its terms. *E-Z Loader,* at 907.

■ Clear and unambiguous policy language must be enforced as written. *Washington Pub. Util. Dists. Utils. Sys. v. PUD 1,* 112 Wn.2d 1, 10, 771 P.2d 701 (1989). In contrast, language susceptible of two different but reasonable interpretations is ambiguous and must be liberally construed in favor of the insured. *Robinson v. PEMCO Ins. Co.,* 71 Wn. App. 746, 750, 862 P.2d 614 (1993).

Federated argues the policy should cover the loss only if Mr. Stevens' conduct was unintentional, or was not directly or indirectly related to Ms. Burlingame's employment at Teague. It argues the harm suffered by Ms. Burlingame was directly or indirectly related to her employment.[2]

Teague notes the personal injury provision excludes any claim for sexual harassment directly or indirectly related to employment. It maintains the policy language is ambiguous because a sexual harassment cause of action in Washington can *only* be premised on an employment relationship. *Glasgow v. Georgia-Pacific Corp.*, 103 Wn.2d 401, 693 P.2d 708 (1985). Although the argument is denominated as one of ambiguity, Teague's position appears to be that Federated should not be permitted to exclude the only cause of action for sexual harassment permitted in Washington.

Teague's argument overlooks the plain language of the policy. Coverage is not restricted to sexual harassment, but rather includes any form of harassment as defined in RCW 9A.46.020(1).[3] The policy here defines personal injury as embarrassment, humiliation or mental anguish arising out of any type of harassment committed in the conduct of the insured's business which is (1) not intentionally committed by an officer, or (2) not directly or indirectly related

---

[2] Because we hold the conduct was directly or indirectly related to Ms. Burlingame's employment, we do not decide whether Mr. Stevens' conduct was intentional.

[3] RCW 9A.46.020(1) provides:

"A person is guilty of harassment if:

"(a) Without lawful authority, the person knowingly threatens:

"(i) To cause bodily injury in the future to the person threatened or to any other person; or

"(ii) To cause physical damage to the property of a person other than the actor; or

"(iii) To subject the person threatened or any other person to physical confinement or restraint; or

"(iv) Maliciously to do any other act which is intended to substantially harm the person threatened or another with respect to his or her physical or mental health or safety; and

"(b) The person by words or conduct places the person threatened in reasonable fear that the threat will be carried out."

to employment. Teague's overly restrictive reading of the policy would render the provision ineffective. The provision is not ambiguous.

■■ Further, we are not persuaded by Teague's argument that the policy is ambiguous because the exclusionary language is sandwiched between general coverage provisions. *Dairyland Ins. Co. v. Ward*, 83 Wn.2d 353, 358, 517 P.2d 966 (1974). Although exclusionary clauses are strictly construed against the insurer, we will not override the clear intent of the parties. *Phil Schroeder, Inc. v. Royal Globe Ins. Co.*, 99 Wn.2d 65, 68, 659 P.2d 509 (1983), *modified in part on reconsideration*, 101 Wn.2d 830, 683 P.2d 186 (1984). An insurer is permitted to limit its liability under the policy with clear language. *McVey v. Nationwide Mut. Ins. Co.*, 58 Wn. App. 288, 291, 792 P.2d 1272 (1990). The exclusion is not susceptible to two different, reasonable interpretations. The terms "directly or indirectly" may be broad, but they are not ambiguous. *McDonald v. State Farm Fire & Cas. Co.*, 119 Wn.2d 724, 734, 837 P.2d 1000 (1992) (fact that clause is confusing does not make it ambiguous). We will not revise the insurance contract. *Britton v. Safeco Ins. Co. of Am.*, 104 Wn.2d 518, 528, 707 P.2d 125 (1985).

Directly or Indirectly Related. The Federated policy provides coverage only if the harassment was *not* directly or indirectly related to Ms. Burlingame's employment. Teague submits that the harassment here was a personal matter and only incidentally related to Ms. Burlingame's duties at Teague. Teague acknowledges that the harassing conduct took place in the workplace, but argues it was not directly related to employment because Mr. Stevens did not require a sexual relationship from Ms. Burlingame as a condition of her future employment or promotions.

■ Teague's reading of the policy is strained and overly restrictive. A supervisor does not have to condition promotions or employment benefits on inappropriate behavior before his conduct is directly or indirectly related to employment. Mr. Stevens was physically aggressive to Ms. Burlin-

game at work and made lewd and obscene comments to her at work. In his capacity as supervisor and owner, he rearranged work schedules so he and Ms. Burlingame would be at Teague during the same hours. His actions created an offensive and hostile employment environment. Ms. Burlingame was forced to end her employment with Teague because of Mr. Stevens' offensive actions. The harassment therefore was directly or indirectly related to her employment.

Finally, Teague relies on *Murphy v. ARA Servs., Inc.*, 164 Ga. App. 859, 298 S.E.2d 528 (1982), a workers' compensation decision which involved a supervisor verbally and physically abusing an employee. There, the Georgia Workers' Compensation Act required an injury to *arise out of* employment and *arise in the course of* employment. *Murphy*, at 861.[4] Industrial insurance is a body of statutory law providing exclusive civil remedies for injuries "arising out of and in the course of the employment". *Murphy*, at 861; RCW Title 51.[5] The causal connection between the work conditions and the resulting injury in *Murphy* was more restrictive than the language of Federated's insurance policy. *Murphy* is inapposite.

In sum, Mr. Stevens' acts of harassment were directly or indirectly related to Ms. Burlingame's employment. The Federated policy does not afford coverage and therefore Federated had no duty to defend. *Greer v. Northwestern Nat'l Ins. Co.*, 109 Wn.2d 191, 197, 743 P.2d 1244 (1987) (alleged claims which are not covered by the policy relieve the insurer of its right and duty to defend).

---

[4]Washington, however, is one of the few states that does not have the "arising out of employment" requirement in its injury statute. RCW 51.32.010; *Dennis v. Department of Labor & Indus.*, 109 Wn.2d 467, 480, 745 P.2d 1295 (1987). Our statute requires only that the injury occur while the worker is within the "course of his or her employment". RCW 51.32.010.

[5]The Industrial Insurance Act, RCW Title 51, is the exclusive remedy of workers against employers for injuries received in employment. RCW 51.04.010. RCW 51.04.010 embodies three principles and declares, among other things, that "sure and certain relief for workers, injured in their work, and their families and dependents is hereby provided [by the act] regardless of questions of fault and to the exclusion of every other remedy . . .".

The summary judgment in favor of Teague is reversed; summary judgment is entered in favor of Federated.

MUNSON and SCHULTHEIS, JJ., concur.